Dennis O. WEGAN, Appellant,

v.

VILLAGE OF LEXINGTON, d.b.a. Village of Lexington Liquor Bar, Defendant and Third-Party Plaintiff,

v.

VILLAGE OF CIRCLE PINES, third-party defendant, Respondent,

and

James ROUNSVILLE and Bonnie R. Rounsville, individually, and as husband and wife, et al., Appellants,

v.

LEONS, INC., d.b.a. Leon's Supper Club, Respondent,

Dennis R. Fredrickson, Defendant,

and

Leslie J. WOLFE, Appellant,

v.

CHINOOK, INC., Respondent,

Timothy Gillaspie, Defendant,

and

Brian J. ECKER, Appellant,

v.

ARCADE BAR, INC., et al., Defendants,

Mohawk Bar, Inc., et al., Respondents,

Bram Corporation, et al., Defendants.

Nos. 51922, 51619, 51718, 51468 and 52074.

Supreme Court of Minnesota.

Aug. 14, 1981.

Rehearing Denied Sept. 25, 1981.

Schermer, Schwappach, Borkin & Ramstad and Barbara L. Heck, Minneapolis, for Wegan.

Cloutier, Musech, Dobis & Johnston, Minneapolis, for Wolfe.

James G. Roban, St. Paul, for Ecker.

Michael C. Lindberg, Bloomington, for Village of Circle Pines.

Foster, Waldeck, Lind & Humphrey and Peter Lind, Minneapolis, for Leons, Inc., and Chinook, Inc.

Arthur, Chapman & Michaelson, Minneapolis, for Mohawk Bar, Inc., et al.

SCOTT, Justice.

This matter involves four actions which, for purposes of this appeal, have been con-

solidated. In three of the cases, *Wegan v. Village of Lexington, Rounsville v. Leons, Inc.*, and *Wolfe v. Chinook, Inc.*, plaintiffs-appellants brought suit pursuant to the Minnesota Dram Shop Act, Minn.Stat. § 340.95 (1980), for recovery of damages they suffered in accidents allegedly caused by the illegal sale of liquor to defendant drivers. In the fourth action, *Ecker v. Arcade Bar, Inc.*, the plaintiff-appellant alleged, *inter alia*, violations of the Minnesota Dram Shop Act and negligence in the serving of 3.2 beer. The *Ecker* case was considered nonorally en banc on the same date as the consolidated cases were argued. In each of these cases the plaintiffs failed either to serve timely notice of their dram shop claims or to initiate their actions within the statute of limitations set forth in Minn.Stat. § 340.951 (1980). Consequently, the district courts granted summary judgment or judgment on the pleadings in respondents' favor. We reverse each of the appealed orders on constitutional grounds.

In *Wegan* plaintiff-appellant Dennis Wegan (Wegan) sustained serious personal injuries on September 8, 1974, as a result of a traffic accident involving his motorcycle and an automobile driven by Ronald Smith (Smith). On October 27, 1976, Wegan served a summons and complaint on Smith and the Village of Lexington, d.b.a. Village of Lexington Liquor Bar (Lexington Bar), alleging, *inter alia*, that the Lexington Bar served Smith intoxicating liquor in violation of the Dram Shop Act.[1] At a hearing to determine whether the Lexington Bar had actual notice of Wegan's claim, it was discovered that Smith also had been drinking at the Village of Circle Pines (Circle Pines) municipal liquor establishment. The Lexington Bar then brought a third-party action for contribution or indemnity against Circle Pines.[2]

On May 29, 1980, Wegan asserted a dram shop claim against Circle Pines. After answering Wegan's claim, Circle Pines moved for judgment on the pleadings because Wegan failed to give proper notice of his claim and did not bring the action within the three-year statute of limitations. On October 17, 1980, the Anoka County District Court ordered that Circle Pines' motion for judgment on the pleadings be granted. Wegan appeals to this court from the October 17, 1980, order.

In *Rounsville*, plaintiff James Rounsville was injured along with his wife, Bonnie, Franklin Rounsville and his wife, Louise, and Winnie Stanhope when, on January 11, 1978, the automobile in which they were riding was struck by a vehicle driven by defendant Dennis Fredrickson (Fredrickson). On March 9, 1978, appellants' attorneys notified Leons, Inc., d/b/a Leon's Supper Club (Leons), of potential claims against it for illegally furnishing alcoholic beverages to Fredrickson. Leons' insurance carrier acknowledged receipt of the notification letter on April 10, 1978. Thus, there is no

---

1. On September 8, 1974, the statute of limitations on dram shop claims was three years. On that date Minn.Stat. § 340.951(3)(1974) read in relevant part: "Any cause of action for injury heretofore caused by an intoxicated person as a result of an illegal sale, barter or gift of liquor and not barred by the existing statute of limitations may be brought within three years after the cause of action accrued * * *." *Id.* In 1977 the legislature amended Minn.Stat. § 340.951(3) by shortening the statute of limitations to one year. *See* Act of June 2, 1977, ch. 390, § 2, 1977 Minn. Laws 888, 888 (current version at Minn.Stat. § 340.951 (1980)).

Although plaintiffs' causes of action in *Wegan* and *Ecker* are controlled by the three-year statute of limitations, the claims in *Wolfe* and *Rounsville* are dependent on the constitutionality of the one-year statute of limitations.

2. On December 17, 1979, the Anoka County District Court issued an order permitting the Lexington Bar to serve a third-party complaint on Circle Pines. Even though no notice of claim was ever filed with Circle Pines, nor any action commenced within three years, the third-party claim was proper because of this court's recent holding in *Hammerschmidt v. Moore*, 274 N.W.2d 79 (Minn.1978), *discussed in* Note, *Contribution & Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts*, 5 Wm. Mitchell L.Rev. 109, 149 n.227 (1979). In *Hammerschmidt* this court held that the notice-of-claim provision requiring that notice be given to the licensee of any liquor establishment within 120 days after an injury was not a condition precedent to a third-party civil damage action for contribution or indemnity.

dispute that appellants in *Rounsville* satisfied the 120-day notice-of-claim provision contained in Minn.Stat. § 340.951. Appellants did not, however, comply with the one-year dram shop statute of limitations contained in Minn.Stat. § 340.951 because their complaint was not served on Leons until May 2, 1979.

After answering the complaint, Leons brought a summary judgment motion, contending that appellants failed to assert their dram shop claims within the one-year statute of limitations. The Hennepin County District Court granted Leons' motion in an order dated July 18, 1979. On August 16, 1979, appellants requested the district court to reconsider that order. Appellants appeal from a June 16, 1980, order denying their motion to reconsider and vacate the earlier order.

In *Wolfe* the plaintiff-appellant Leslie Wolfe (Wolfe) sustained personal injuries on September 30, 1978 when she and four other pedestrians were struck by an automobile driven by Timothy Gillaspie (Gillaspie). On March 11, 1980, Wolfe served a summons and complaint on Gillaspie and Chinook, Inc. (Chinook) alleging *inter alia* that Chinook served Gillaspie intoxicating liquor in violation of the Dram Shop Act. In accordance with Minn.Stat. § 340.951 Wolfe served a written notice of claim upon Chinook within 120 days of the claimed violation, but failed to commence her lawsuit within the one-year statute of limitations. After interposing its answer, Chinook brought a summary judgment motion based upon Wolfe's failure to prosecute her action within the one-year statute of limitations. In an order dated April 21, 1980, the Hennepin County District Court granted

Chinook's motion. Wolfe appeals to this court from the April 21, 1980, order.

In *Ecker* the plaintiff-appellant Brian Ecker (Ecker) sustained severe injuries on October 5, 1974, when he was struck by an automobile driven by George Radle.[3] At the time of the accident, Ecker was involved in an altercation with David Morseth (Morseth).[4]

In September 1977,[5] Ecker served a summons and complaint on Mohawk Bar, Inc., d.b.a. The West Sider (Mohawk). Also named as defendants were Arcade Bar, Inc., and Bram Corporation, d.b.a. Arcade Bar (Arcade). The complaint alleged two counts against Mohawk and Arcade: (1) that defendants served Morseth intoxicating liquor in violation of the Dram Shop Act, and (2) that defendants negligently served Morseth 3.2 beer. Mohawk denied the allegations of the complaint and affirmatively alleged lack of notice under the Dram Shop Act.

Ecker's claims against Arcade were settled. Mohawk, the remaining defendant, brought a motion for summary judgment on Count I of plaintiff's complaint, asserting that it had not received timely written or actual notice of plaintiff's dram shop claim as required by Minn.Stat. § 340.-951(3), and on Count II, alleging that there were no facts indicating that Morseth consumed 3.2 beer. In denying the summary judgment motion, the district court indicated in its order that an examination of the documents revealed that no written notice was given to Mohawk of Ecker's dram shop claim. The court stated, however, that the issue of whether actual notice was received by Mohawk was one of fact requiring a trial on the merits.

---

**3.** The Radle vehicle was insured by State Farm Insurance Company. As a result of an investigation of the incident, it was learned that Radle had been drinking at Gallagher's White Elephant Club.

Ecker settled his claim against State Farm for $10,000, the policy limits on the Radle vehicle. Ecker's claim against Gallagher's White Elephant Club was settled for $30,000 through the use of a Pierringer release.

**4.** Both Ecker and Morseth were struck by the Radle vehicle while fighting on the street. Ecker claims that Morseth refused to release him although Ecker warned him of the approaching car.

**5.** On October 5, 1974, the statute of limitations on dram shop actions was three years. Ecker's cause of action was, therefore, brought within the applicable statute of limitations. Only the validity of the notice-of-claim provision is at issue in Ecker's case.

On December 9, 1980, after the notice issue was tried before the district court sitting without a jury, that court issued an order dismissing Ecker's dram shop action with prejudice. The court found that Mohawk did not receive either written or actual notice of Ecker's claim as required by Minn.Stat. § 340.951, subd. 3.[6] The court further held that Ecker was estopped from asserting the unconstitutionality of the notice provision. Plaintiff appeals from the December 9, 1980 order.

Two issues are raised in the various appeals. First, whether any of the plaintiffs are estopped from challenging the constitutionality of the commencement-of-suit or notice-of-claim provisions contained in Minn.Stat. § 340.951. Second, whether the commencement-of-suit and notice-of-claim provisions contained in Minn.Stat. § 340.951 violate the equal protection clause of the United States and Minnesota Constitutions.

■ 1. The first issue results from the district court's holding in *Ecker* that "since plaintiff here invoked the provisions of Minn.Stat. § 340.951 and claimed that defendant Mohawk had actual notice of his injury, he cannot, in the next breath, claim it is unconstitutional." In support of its conclusion that Ecker was estopped from challenging the constitutionality of the notice-of-claim provision, the district court relied upon the tax cases of *Byard v. Commissioner of Taxation*, 209 Minn. 215, 296 N.W. 10 (1941), and *Gale v. Commissioner of Taxation*, 228 Minn. 345, 37 N.W.2d 711 (1949).

Whatever continued validity the doctrine of estoppel has in the area of tax benefits, neither Ecker nor any of the other plaintiffs should be estopped from attacking the notice-of-claim or commencement-of-suit provisions. To rule otherwise would be inconsistent with our recent holdings permitting plaintiffs to challenge the constitutionality of various statutes while seeking benefits under the same laws. *See, e. g., Haugen v. Town of Waltham*, 292 N.W.2d 737 (Minn.1980) (plaintiff successfully asserted

unconstitutionality of portion of Minnesota No-Fault Act while obtaining benefits under that law); *Werner v. Olmsted County*, 290 N.W.2d 444 (Minn.1980) (claimant awarded workers' compensation benefits after successful challenge to constitutionality of workers' compensation provision).

2. Any examination of the constitutionality of the commencement-of-suit and notice-of-claim requirements must begin with our decision in *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973). In *Trail*, a liquor vendor sold 3.2 beer to the defendant, an intoxicated minor. The defendant drove his automobile into the rear of another automobile in which the plaintiff, an innocent third party, was a passenger. As a result of the collision the plaintiff suffered a severed spine, rendering her an invalid. Minnesota's Dram Shop Act does not impose liability for the unlawful sale of 3.2 beer. Consequently, the plaintiff in *Trail* argued that the common law should permit a negligence action against a vendor who made a negligent sale of 3.2 beer. In holding that a vendor of 3.2 beer could be liable in negligence, the *Trail* court found that the legislature did not, by its enactment of the Dram Shop Act, preempt all common law dram shop actions. The *Trail* court stated: "We will not promote legislative silence to legislative preemption. To do so would immunize a certain segment of the liquor industry, namely dispensers of 3.2 beer, from liability for negligent conduct which causes serious injury to innocent third persons." *Id.* at 112, 213 N.W.2d at 625.

Because the cause of action in *Trail* is grounded in common-law negligence, the six-year tort statute of limitations contained in Minn.Stat. § 541.05 (1980) is applicable. Additionally, no notice of claim is required as a condition precedent to suit. Because of this court's holding in *Trail*, appellants argue that the law protects different classes of claimants unequally and that the following classifications exist:

6. Ecker's action was bifurcated for trial. Only the dram shop claim was dismissed; the common law cause of action against Mohawk for

the negligent sale of 3.2 beer to Morseth has not yet been tried.

(1) Vendors of 3.2 beer liable in negligence have a six-year statute of limitations and no notice-of-claim requirement;

(2) Minnesota vendors of intoxicating liquor whose liability is purely statutory are protected by a one-year statute of limitations and a 120-day notice-of-claim requirement.

Appellants further argue that these classifications result in such unequal treatment that their right to equal protection under the law is violated.[7]

Respondents contend that even if such classifications exist, they do not result from legislative action and, therefore, do not constitute an equal protection violation. Respondents argue that any alleged disparity in treatment exists due to the *Trail* decision. We do not find respondents' reasoning persuasive. An examination of the history of the Minnesota Dram Shop Act clearly indicates that only because of *legislative* action is there a distinction between "non-intoxicating" 3.2 beer and "intoxicating" liquor.

Prior to 1911 there was only one chapter in the laws of Minnesota that regulated intoxicating liquor. *See* Minn.Rev.Laws, ch. 16 (1905). In 1911, the Minnesota Legislature enacted the statutory predecessor to Minn.Stat. § 340.95 (1980), commonly referred to as the Dram Shop Act. Act of Apr. 18, 1911, ch. 175, 1911 Minn.Laws 221. At that time the statute did not define intoxicating liquor by a percentage of either volume or weight. The 1911 Dram Shop Act provided no definition of intoxicating liquor. Therefore, one must rely on the definition of intoxicating liquor contained in Minn.Rev.Laws, ch. 16, § 1564 (1905), which remained in effect on the date that the Dram Shop Act was enacted. That law stated: "The terms 'intoxicating liquor' and 'liquor,' wherever used in this chapter,

shall include distilled, fermented, spirituous, vinous and *malt liquor.*" *Id.* (emphasis added). Malt liquor obviously includes 3.2 beer. Indeed, early decisions from this court indicate that all types of beer are intoxicating.[8] Thus, when the Minnesota Dram Shop Act was originally enacted it included within its meaning a person intoxicated by 3.2 beer.

In 1919 Minnesota's law relating to prohibition was enacted. Act of Apr. 25, 1919, ch. 455, 1919 Minn.Laws 537. This law contained its own definition of what constituted intoxicating liquor.

Wherever used in this Act the terms "intoxicating liquor" and "liquor" shall include and mean ethyl alcohol and any distilled, fermented, spirituous, vinous, or malt liquor or liquid of any kind potable as a beverage, whenever any of said liquors or liquid contain one-half of one percent or more of alcohol by volume.

*Id.* § 1, 1919 Minn.Laws at 537. Under this definition 3.2 beer would certainly be an intoxicating beverage.

The liquor laws of Minnesota were not substantially amended until 1933 and 1934, when the State Beer Acts and Liquor Control Act were respectively passed. The State Beer Acts, Act of Mar. 27, 1933, ch. 115, 1933 Minn.Laws 119, and Act of Mar. 27, 1933, ch. 116, 1933 Minn.Laws 120, regulated the manufacture, sale and license to sell of any beverage containing more than 3.2 percent alcohol by weight. Chapter 115 of the 1933 State Beer Act specifically defined "intoxicating malt liquor" as containing in excess of 3.2 percent of alcohol by weight. Act of Mar. 27, 1933, ch. 115, 1933 Minn.Laws 119, 120. The Liquor Control Act regulated the manufacture, sale, and licensing of intoxicating liquor. Act of Jan. 6, 1934, ch. 46, 1934 Minn.Laws Ex.Sess. 50.

7. Appellants contend that these classifications contravene the equal protection guarantees contained in U.S.Const. amend. XIV, and Minn. Const. art. 1, § 2.

8. For example, in *State v. Dick*, 47 Minn. 375, 50 N.W. 362 (1891), we held that the term "intoxicating liquor" meant any malt liquor. Similarly, in *State v. McGinnis*, 30 Minn. 52, 14

N.W. 258 (1882), we held that the term "intoxicating liquor" included, but was not limited to "whisky or gin or wine or malt beer." *Id.* at 54, 14 N.W. at 259. *Cf. Osborn v. Leuffgen,* 381 Ill. 295, 298, 45 N.E.2d 622, 624 (1942) ("Beer is an alcoholic liquor and it is a matter of common knowledge that all alcoholic liquors are intoxicating * * *.")

Because of the definitional change in the 1933 State Beer Act, we noted in *Beck v. Groe*, 245 Minn. 28, 70 N.W.2d 886 (1955), that the legislature did not intend 3.2 beer to be an intoxicant within the meaning of the Minnesota Dram Shop Act.

The State Beer Acts were enacted on March 27, 1933, when prohibition was still in effect. The Twenty-first Amendment to the United States Constitution, which repealed prohibition, did not take effect until nine months later.[9] Thus, it is clear that the 1933 Minnesota Legislature passed the State Beer Acts so that vendors would be able to sell 3.2 beer without being exposed to punishment for violating prohibition. The only method available to solve this dilemma was for the 1933 Minnesota Legislature to define 3.2 beer as non-intoxicating. Although the reasons for defining 3.2 beer as non-intoxicating have long passed, this *legislative* classification continues to the present day. Moreover, the legislature's definition of 3.2 beer as "non-intoxicating" remains unchanged, although we stated in *Trail* that "we have judicially recognized the reality that a person can become intoxicated by consuming 3.2 beer." 298 Minn. at 107, 213 N.W.2d at 621. The legislative classifications subject this statute to constitutional attack on its face, and as applied.

■■ Resolution of the constitutional issue raised in this case is governed by well-established principles of constitutional construction. "There is, of course, a presumption in favor of the constitutionality of the statute * * *." *Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (Minn. 1980). Moreover, the power of this court to declare a statute unconstitutional "is to be exercised only when absolutely necessary, and then with extreme caution." *Schwartz*

*v. Talmo*, 295 Minn. 356, 363, 205 N.W.2d 318, 323, *appeal dismissed*, 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973). Furthermore, a statute will not be declared unconstitutional unless the party challenging it demonstrates beyond a reasonable doubt that the statute violates some constitutional provision. *Head v. Special School District No. 1*, 288 Minn. 496, 182 N.W.2d 887 (1970), cert. denied, *Mpls. Federation of Teachers v. Spannaus*, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971).

■ In applying these well-established principles it is necessary first to determine the appropriate standard of constitutional review. Our recent decision in *Kossak v. Stalling*, 277 N.W.2d 30 (Minn.1979), *noted in* 6 Wm. Mitchell L.Rev. 490 (1980), is instructive on this issue. In *Kossak*, the constitutionality of the one-year statute of limitations applicable to negligence actions against municipal defendants was challenged as being violative of the equal protection clause. In that case, plaintiff brought suit against the City of Duluth and Stalling, a Duluth employee, for injuries plaintiff suffered in an automobile accident allegedly caused by Stalling's negligence. Plaintiff never filed a notice of claim with the city, and did not bring suit until four years after the accident. The *Kossak* court found that the one-year commencement-of-suit requirement created two distinct classes of tortfeasors and tort victims.[10] *See id.* at 34. The court noted that the one-year requirement subjects private tortfeasors to the general six-year statute of limitations, but subjects municipal tortfeasors to an abbreviated one-year statute of limitations, thereby exposing the former to a greater risk of liability than the latter. *See id.* In determining that the commencement-of-suit requirement violated equal protection, the *Kossak* court applied the

---

**9.** In *United States v. Chambers*, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1933), the United States Supreme Court stated: "This court takes judicial notice of the fact that the ratification of the Twenty-first Amendment of the Constitution of the United States, which repealed the Eighteenth Amendment, was consummated on December 5, 1933." *Id.* at 222, 54 S.Ct. at 435 (footnote omitted).

**10.** Because the City of Duluth received actual notice of the accident, this court did not find it necessary to address the constitutionality of the notice-of-claim provision. *See* 277 N.W.2d at 33.

rational basis standard of review set forth in *Schwartz v. Talmo.* In our opinion, this is the appropriate constitutional standard of review in the instant cases.

 Because a rational basis test is applicable, the three-factor test most recently enunciated in *Guilliams v. Commissioner of Revenue* must be satisfied. In *Guilliams* we stated that:

This court has listed three factors in measuring a statutory classification against the equal protection requirement: (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

299 N.W.2d at 142, *quoting Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn. 1979).

*Guilliams'* third factor is satisfied. The justifications for the commencement-of-suit and notice-of-claim provisions may be summarized as follows:

1. To provide dramshops with an early opportunity to investigate claims;

2. to facilitate negotiation and settlement without litigation;

3. to correct any defects revealed by the occurrence before more people suffer injury;

4. to protect against stale and fraudulent claims.

Certainly, these are legitimate purposes. The statute is fatally defective, however, because it cannot satisfy *Guilliams'* first and second factors. The classifications (sale of 3.2 beer versus sale of intoxicating liquor) are not genuine or relevant to the purpose of the law. Moreover, the distinctions which separate those included within the classification from those excluded are manifestly arbitrary and fanciful. Because prohibition was repealed almost half a century ago, the legislative distinctions between 3.2 beer and intoxicating liquor are based, at best, upon historical anachronisms. There is no rational basis for distinguishing between persons injured by those intoxicated from drinking 3.2 beer and those intoxicated as a result of consuming stronger liquor. An injured person cares little whether the driver who causes his injuries became intoxicated as a result of consuming 3.2 beer or stronger liquor. Indeed, a lay person unable to obtain just compensation because of the peculiarities of Minnesota's Dram Shop Law could justifiably conclude that he was the victim of artificial legal word games.

Moreover, the continued reference to 3.2 beer as "non-intoxicating" results in a number of anomalies and absurdities that become apparent in the context of a lawsuit alleging both 3.2 negligence and Minn.Stat. § 340.95 liability.[11] Additional exacerbations arise in contribution actions between 3.2 and liquor vendors.[12]

---

11. The irrationality of the legislative classifications is well illustrated by the facts in *Ecker.* In that case the same establishment allegedly served a patron responsible for Ecker's injury 3.2 "non-intoxicating" beer and "intoxicating liquor." Although the district court dismissed Ecker's dram shop claim, it left pending Ecker's 3.2 negligence action against the same bar.

In the common-law negligence action, Ecker will attempt to submit into evidence exactly the same proof that he would have submitted in an action based on Minn.Stat. § 340.95. The dram shop defendant, no doubt, will object to any

evidence that the alleged intoxicated person consumed intoxicating liquor because that cause of action was dismissed. The resulting confusion regarding what testimony pertains to 3.2 beer versus intoxicating liquor in itself raises perplexing constitutional issues. *See generally Price v. Amdahl,* 256 N.W.2d 461 (Minn. 1977), *noted in* 4 Wm. Mitchell L.Rev. 245 (1978).

12. Contribution problems occur because only strong liquor vendors are protected by the cap on damages contained in Minn.Stat. § 340.95. To remedy this problem, we suggest that the

Our decision that the classifications at issue rest on purely arbitrary grounds is consistent with our holding in *Kossak* [13] and also finds support in *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977). In that case we held that the statute requiring actions to be brought within two years to recover damages for any injury to property or for bodily injury or death because of another's designing, planning, supervising, constructing, or improving real property was unconstitutional. We found that granting negligent builders a two-year statute of limitations constituted a denial of equal protection because the legislative classifications in that case were fanciful and arbitrary, and had no rational basis.

The classifications at issue in the cases at bar rest on a legal foundation less sound than those in *Kossak* and *Pacific Indemnity*. For all of the above reasons, we hold that the commencement-of-suit and notice-of-claim provisions at issue violate the equal protection clause of the United States and Minnesota Constitutions.[14] Until the legislature enacts corrective legislation, all dram shop claims are controlled by the six-year statute of limitations in Minn.Stat. § 541.05, subd. 1(2) (1980). Additionally, compliance with the notice-of-claim provision is not necessary.

Accordingly, we reverse and remand each of the orders appealed from for trial on the merits.

AMDAHL, Justice (concurring specially).

I agree with the majority that the notice of claim and statute of limitations provisions of the Civil Damages Act, Minn.Stat. § 340.95–.951 (1980), are violative of equal protection. However, I would go further and hold that the entire Act is constitutionally infirm because the Legislature's failure to impose liability under the Act upon 3.2 beer vendors is without a rational basis. The reasoning of the majority opinion clearly supports this proposed result although the majority concludes that only a portion of the Act is invalid.

We have never directly confronted an equal protection challenge to the Civil Damages Act. We are now faced with that issue and I believe we should address it squarely.

The majority examines the history of the Civil Damages Act in detail and concludes that 3.2 beer was defined as "non-intoxicating" by the 1933 Minnesota Legislature so that vendors could sell 3.2 beer without violating prohibition. Notwithstanding the validity of the majority opinion's historical analysis, I respectfully believe that this discussion does not help us resolve the issue at bar.

The crux of the problem before us is that the statute on its face creates a classification between two types of liquor vendors; vendors of "intoxicating liquor" and vendors of 3.2 beer. "Intoxicating liquor" vendors are subject to liability under the Act while 3.2 beer vendors who engage in the

---

legislature reexamine Minnesota dram shop law and place 3.2 vendors on the same footing as Minn.Stat. § 340.95 violators. Absent corrective legislation, potential constitutional problems arise. Nothing in this opinion should be read as indicating approval of any legislative cap on damages. Whether any such limits on liability can pass constitutional muster is not an issue before this court.

13. Respondents seek to distinguish *Kossak* because that case involved a common-law negligence action, while the instant cases involve a statutory cause of action. Such a distinction is more semantic than real. The same constitutional principles apply regardless of whether a cause of action is based on negligence or statutory strict liability.

Moreover, respondents overstate the difference between the two causes of action. Under either cause of action a plaintiff must prove that the vendor knew or should have known that the patron was "obviously intoxicated." In a dram shop action this burden of proof is mandated by Minn.Stat. § 340.14(1a) (1980). In an action against a 3.2 vendor this burden of proof is simply an application of general common-law negligence precepts.

14. Although we hold that the classifications violate the United States and Minnesota Constitutions, we also conclude that even if the classifications passed constitutional muster under the federal constitution, they would still be defective under our state constitution.

same conduct are not. Consequently, victims of illegal sales of "intoxicating liquor" and those injured by sales of 3.2 beer are placed in different classifications.

The majority correctly sets forth the appropriate standard of review but does not go far enough in applying it. Legislative classifications must apply uniformly to all similarly situated persons and the distinctions which separate those who are included within a classification and those who are not must be natural and reasonable. *Schwartz v. Talmo*, 295 Minn. 356, 362, 205 N.W.2d 318, 322 *appeal dismissed*, 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973); *See Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (Minn.1980). The majority concludes that the statute does not meet this test, noting that "[t]he classifications (sale of 3.2 beer versus sale of intoxicating liquor) are not genuine or relevant to the purpose of the law", that "the distinctions which separate those included within the classification from those excluded are manifestly arbitrary and fanciful", and that "there is no rational basis for distinguishing between persons injured by those intoxicated from 3.2 beer and those intoxicated as a result of consuming stronger liquor." It is further recognized that "the legislative distinctions between 3.2 beer and intoxicating liquor are based, at best, upon historical anachronisms." In the face of these statements, the majority proposes to leave the Act intact and selectively strikes only the notice-of-claim and statute of limitations provisions.

The majority forcefully asserts that "the classifications at issue * * * rest on a legal foundation less sound than those in *Kossak* and *Pacific Indemnity*," where disparate statutes of limitations favoring certain persons were declared violative of equal protection. In my opinion, the majority reads these cases too narrowly, overlooking the underlying rationale for striking the statutes there at issue. The statutes in *Kossak* and *Pacific Indemnity* were declared unconstitutional because the legislative classifications were without a rational basis.

I submit that if the legislative classifications created between liquor vendors and their respective victims have no rational basis, the Civil Damages Act as a whole is repugnant to the equal protection clause.

Respondents argue that the disparity in treatment accorded the two types of liquor vendors exists by virtue of our decision in *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973). The fact that a *Trail* negligence cause of action is available against a 3.2 beer vendor is, in my view, irrelevant to the resolution of the constitutional issue. The Civil Damages Act is nevertheless defective on its face, because no statutory liability is imposed upon vendors of 3.2 beer.

The availability of a common law action in situations in which the Civil Damages Act is inapplicable does, however, accentuate the need to strike the Act in its entirety. Both the majority and the dissent note a number of "anomalies and absurdities" inherent in continued recognition of two separate causes of action against liquor vendors who should, in my opinion, be subject to the same liability. Of these, the cap on damages of $250,000 in dramshop actions while damages are not so limited in *Trail* actions is the most blatant. Confusing problems are also evident with regard to the defenses available to a negligent 3.2 beer vendor and those which may be asserted by a dramshop vendor.[1] As recognized by the majority, further problems in proof and evidence may arise in an action alleging both negligence and dramshop liability. These differences raise perplexing constitutional problems which are best solved by declaring that actions against all liquor vendors are to be governed by common principles and procedural requirements. Nullifying only the disparate statute of limitations and notice of claim requirement of the Civil Damages Act begs the issue and merely

1. In 1977, the Legislature amended the Civil Damages Act to provide that our comparative fault statute, Minn.Stat. § 604.01 (1980), was applicable in dramshop actions unless the action is brought by a dependent of an intoxicated person. Act of June 2, 1977, ch. 390, § 2, 1977 Minn.Laws 888 (current version at Minn. Stat. § 340.95 (1980)).

defers an ineluctable result: any distinction made between the liabilities of 3.2 beer and "intoxicating liquor" vendors or the rights of their respective victims are violative of equal protection. It is inevitable that challenges based on these and other potential disparities between a negligence cause of action and one brought pursuant to the Act will be before this court in the future. I see no reason to engage in piecemeal rulings when the result is eminently clear at this time.

I agree with the dissent that the solution lies in an amendment to the Civil Damages Act to include 3.2 beer in the Act's definition of intoxicating liquor. However, I disagree that this court should sit in silence and await legislative action to remedy the problems inherent in that Act for a number of reasons. First, as Mr. Chief Justice Marshall noted in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), when an act is repugnant to the constitution it is the court's duty to invalidate that law immediately. Any other result "would subvert the very foundation of all written constitutions. It would declare that an act which, according to the principles and theory of our government, is entirely void, is yet, in practice, completely obligatory." *Id.* at 177, 2 L.Ed. 60. Second, our oath of office compels us to strike down unconstitutional laws. Once we determine that a law is unconstitutional we would be remiss in our duty to merely request the Legislature to enact corrective legislation.

Third, I do not find relevant *Spanel v. Mounds View School Dist. No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962), in which we refused to abrogate governmental tort immunity until after the next legislative session ended. That case involved a rule of substantive tort law created by this court, not the constitutionality of a state law. Additionally, while courts traditionally follow a general rule of retroactive ruling, *see e. g., Hoven v. McCarthy Brothers Co.*, 163 Minn. 339, 341, 204 N.W. 29, 30 (1925), *Spanel* fell within an exception to that rule. *See* Note, *The Retroactivity of Minnesota Supreme Court Personal Injury Decisions*, 6 Wm. Mitchell L.Rev. 179, 185–88 (1980).

When the abolition of a tort immunity is involved, courts usually apply their rulings prospectively because litigants have justifiably relied on prior case law. *Id.* In *Spanel*, abrogating the doctrine of tort immunity allowed governmental entities sufficient time to procure insurance.

No similar inequity exists in the instant cases to justify a prospective or tentative invalidation of the Civil Damages Act. Liquor vendors are not, by virtue of the proposed result, deprived of a substantive defense upon which they previously relied. This is not a case in which there has been a longstanding rule of immunity from suit; both types of liquor vendors are now liable to innocent third persons and commonly procure appropriate insurance.

Fourth, by prospectively declaring the unconstitutionality of the Civil Damages Act, the dissent ignores the policy of providing incentives for challenging unconstitutional laws and outmoded legal doctrines. Courts and commentators have long recognized that public policy should encourage litigants to challenge unconstitutional law and obsolete legal rules. *See e. g., Li v. Yellow Cab Co.*, 13 Cal.3d 804, 829–830, 532 P.2d 1226, 1244, 119 Cal.Rptr. 858, 876 (1975) (doctrine of contributory negligence abrogated and new rule of comparative negligence given retroactive application); Mishkin, *Foreward: The High Court, The Great Writ, and the Due Process of Time and Law*, 79 Harv.L.Rev. 56, 60–62 (1965).

Finally, the dissent in effect would have this court issue advisory opinions. This court has long had a policy of refusing to provide legal opinions in advisory form.

Although I recognize that the Legislature "may implement [its] program step by step * * * adopting regulations that only partially ameliorate a perceived evil and referring complete elimination of the evil to future regulations," *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 457, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981), the Civil Damages Act has been in force since 1911 and has been amended numerous times since its enactment. The Legislature has

had the opportunity to correct the constitutional infirmities of the Act and has not done so.

Where the Civil Damages Act was applicable, we have consistently declined to find a common law action against a liquor vendor because of legislative pre-emption in the area. *Blamey v. Brown*, 270 N.W.2d 884, 890 (Minn.1978); *Fitzer v. Bloom*, 253 N.W.2d 395, 403 (Minn.1977). Striking the statute would obviate that impediment. I would hold that actions against both 3.2 beer vendors and "intoxicating liquor" vendors are to be governed by the common law principles established by *Trail* and its progeny until such time as the Legislature enacts a statute which passes constitutional muster.

PETERSON, Justice (concurring).

I agree with the opinion of Justice Amdahl.

WAHL, Justice (concurring).

I agree with the opinion of Justice Amdahl.

SIMONETT, Justice (dissenting).

The majority says the legislature is responsible for the inequality of treatment between victims of 3.2 beer sales and victims of sales of more potent intoxicating liquor. This is because the legislature excluded 3.2 beer from the definition of intoxicating liquor in the Civil Damages Act.

Undeniably, a person can get just as intoxicated on 3.2 beer as on more potent liquor. The majority opinion traces the history of how 3.2 beer came to be regulated differently, but this does not fully explain why the legislature still did not choose to include 3.2 vendors in the Civil Damages Act after 1933. Since the Civil Damages Act was considered to be in derogation of the common law, which afforded no remedy against any liquor vendor, and since the Act was deemed to be penal in nature, the legislature may have felt it would limit the penalty to vendors of more potent intoxicating liquor, where it felt the potential for abuse was greater. This would be consist-

ent with the rationale then prevalent that dramshop liability "is only a means of punishment for having violated the law and is not based on a wrong done to the plaintiffs." *Beck v. Groe*, 245 Minn. 28, 35, 70 N.W.2d 886, 892 (1955). The legislature's discretion to deal selectively with conduct which it deems to pose the most significant societal problems is especially broad in the penal area. *State v. Witt*, 310 Minn. 211, 217, 245 N.W.2d 612, 615 (1976).

The common law, however, is not static. In recent years, this court, in construing the Civil Damages Act, has focused more on the wrong done to the injured, innocent third party, *i. e.*, on the remedial aspects of the Act rather than its penal side. For example, in *Ross v. Ross*, 294 Minn. 115, 200 N.W.2d 149 (1972), after observing the Act was both penal and remedial, we construed the Act to apply to social hosts; the legislature, then, by a 1977 legislative amendment curtailed this construction of the statute by deleting the phrase "giving" from the Act's prohibitions.

Not until 1973, with *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973), did we modify the longstanding common-law rule that no cause of action existed against the liquor vendor. In *Trail* we held a common-law negligence action existed against a 3.2 beer vendor outside the Civil Damages Act. With the advent of *Trail*, an equal-protection claim plainly surfaced. A person injured by an intoxicated person should not have his or her remedy measured by delicate distinction as to whether the intoxicated person had been drinking 3.2 or strong beer. But to say the two situations should not be treated differently does not offer much insight into which way the two situations should be treated.

Since 1973 we have had an anomalous situation, as illustrated by this case. A *Trail* cause of action expires after 6 years; a dramshop action after 1 year. The majority here opts for 6 years and declares the shorter limitation period unconstitutional. A *Trail* cause of action has no notice of claim as a condition precedent to suit; a

dramshop action has a 120-day notice requirement. Again the majority opts for no notice and declares the notice provision of the dramshop action unconstitutional. A *Trail* cause of action permits unlimited damages, while a dramshop action has a limit of $250,000. This restriction on damages is not before us now, but it would seem, as the majority points out, this disparity will have to be met before long. Other differences between the two causes of action (such as in the proof required and the defenses available) remain for later appeals.

I think the solution is for the legislature to amend the Civil Damages Act to include 3.2 beer in the Act's definition of intoxicating liquor. The amendment in 1977 to make dramshop actions subject to the comparative fault statute is indicative of the legislature's awareness of the nonpenal aspects of the Act.

I would prefer we not disturb the Act until the legislature has had an opportunity to enact its own corrective measures. This seems preferable to piecemeal judicial legislation. The difficulty in attacking the problem piecemeal is illustrated here by the striking down of the 120-day notice provision. It would seem the legislature had reasonable grounds for the notice requirement. Unlike other tort actions, a dramshop action has some unique features. The accident in which the third party is injured frequently occurs off the vendor's premises, at a distant time and place, so that the vendor may be unaware of the potential claim against him or her and consequently unaware of the need to make a prompt investigation.

There is authority for the solution proposed here. In *Spanel v. Mounds View School Dist. No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962), we refused to abrogate governmental tort immunity in that case but stated we would do so with respect to tort claims arising after the next legislature adjourned. More recently, in *State by Powderly v. Erickson*, 301 N.W.2d 324, 327 (Minn.1981), we extended an injunction against demolition of row houses "until such time as the present Minnesota legislature has had an opportunity to address the problems surfaced by this litigation.

We are dealing here, of course, with constitutional infirmities which should be corrected promptly. It is not clear, however, that the legislature was fully aware of the constitutional implications of *Trail*; at least those implications were not alluded to in that decision. Moreover, the legislature "may implement [its] program step by step * * * adopting regulations that only partially ameliorate a perceived evil and referring complete elimination of the evil to future regulations." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 457, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976). In view of the history of the Civil Damages Act and the complexity of the problems and conflicting interests involved, I would, for now, defer to legislative action.

SHERAN, Chief Justice (dissenting).

I agree with the opinion of Justice Simonett.

OTIS, Justice (dissenting).

I join in the dissent of Justice Simonett.

TODD, Justice (dissenting).

I join in the dissent of Justice Simonett.