Jeffrey B. NELSON, et al., Appellant,

v.

Harry PETERSON, Commissioner-designate Minnesota Department of Labor and Industry, et al., Respondents.

No. 81–737.

Supreme Court of Minnesota.

Dec. 17, 1981.

Gregg M. Corwin, St. Louis Park, for appellant.

Warren Spannaus, Atty. Gen., and Erica Jacobson, Sp. Asst. Atty. Gen., St. Paul, for respondents.

TODD, Justice.

This is an appeal by plaintiffs, who are petitioners' attorneys for the Department of Labor and Industry, from an order declaring that Act of June 1, 1981, ch. 346, section 103, 1981 Minn.Sess. Laws Serv. 1611, 1676[1] is constitutional. We find section 103 denies to persons in the positions of plaintiffs equal protection of the laws guaranteed by both the United States and Minnesota constitutions, and accordingly, we reverse.

Chapter 346 is a bill passed by the 1981 Minnesota Legislature which comprehensively revises the Workers' Compensation system in Minnesota. Among other changes, this bill specifically excludes certain attorneys in the Workers' Compensation division of the Department of Labor and Industry from being eligible for appointment as compensation judges.

Section 103 provides:

No attorney acting pursuant to Section 176.261 shall be hired or appointed as a compensation judge for a period of two years following termination of service with the division.

Minn.Stat. § 176.261 (1980) provides:

---

1. To be codified at Minn.Stat. § 176.262.

When requested by an employer or an employee or his dependent, the commissioner of the department of labor and industry may designate one or more of the division employees to advise that party of his rights under this chapter, and as far as possible to assist in adjusting differences between the parties. The person so designated may appear in person in any proceedings under this chapter as the representative or adviser of the party. In such case, the party need not be represented by an attorney at law.

By stipulation, both parties have agreed that attorneys acting pursuant to section 176.261 represent only petitioners in workers' compensation proceedings. Therefore, section 103 excludes only those division attorneys who represent employees in workers' compensation proceedings. Attorneys in the division who regularly represent the state of Minnesota as defendant in such proceedings, the special assistant attorney general representing the Special Fund in such cases, the Compensation Counsel (who supervises the division attorneys and approves settlements), and his supervisor, are all eligible for compensation judgeships. Furthermore, private attorneys who represent either plaintiffs or defendants in workers' compensation matters, even if they exclusively represent one type of party, are also eligible.

The state offered an undisputed affidavit to the effect that every compensation judge currently sitting on the bench had previous experience as a section 176.261 petitioner's attorney. The record and oral argument further disclosed that the practice in the workers' compensation division was and is to require every attorney hired into that division to begin his tenure of employment as a petitioners' attorney. That position is, in effect, an entry-level one through which every state defense attorney, compensation counsel and other attorney in the division must initially pass. Thus, every compensation judge appointed from the division must, of necessity, have spent some period of time, however brief, as a petitioner's attorney. The new workers' compensation bill also states that compensation judges must "be learned in the law [and] have demonstrated knowledge of workers' compensation laws * * *." Act of June 1, 1981, ch. 346, section 2 (amending Minn.Stat. § 15.052, section 1 (1980)).

The parties agree that the standard of review applicable in the instant case is the familiar rational basis test. As we recently stated in *Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (Minn.1980),

This court has listed three factors in measuring a statutory classification against the equal protection requirement:

"(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve."

*quoting Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979).[2] We do not sit to pass judgment upon the wisdom of a particular legislative scheme. We are bound, however, by our constitutional mandate to inquire into the arbitrariness of legislative classifications. This we now do.

2. We do not find that the recent United States Supreme Court decision in *State of Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 457, 100 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981), alters our analysis under *Guilliams*. In *Clover Leaf*, that court reiterated the long-held proposition that, as a matter of federal equal protection doctrine, a court is not free to substitute its judgment of the wisdom of the challenged statute for that of the legislature based upon its own independent evaluation of the legislative facts. Under *Guilliams*, we continue to adhere to this proposition. We therefore analyze the record in this case solely for the more limited purpose of determining the rationality, without regard for the wisdom, of the challenged legislative classifications.

Initially, we accept, for purposes of this opinion, the attorney general's[3] assertions as to the purposes attempted to be served by section 103. The state offers two justifications for the ineligibility provision:

1. to eliminate any appearance or perception that compensation judges are biased in favor of employees, and

2. to broaden the backgrounds and past experiences of compensation judges. Certainly these are legitimate purposes, satisfying the third factor in the *Guilliams* test.

Although a statute's purposes are legitimate, it still may be found to be unconstitutionally defective if the means chosen to affect those purposes are arbitrary or irrational. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). The first two *Guilliams* factors define this court's requirements as to the constitutionality of the chosen legislative classifications. Because section 103 is incapable of satisfying these two factors, we find that this section is irrational and therefore unconstitutional.

Section 103 classifies candidates for compensation judgeships into two categories: state-employed attorneys currently serving as section 176.261 petitioner's attorneys, who are made ineligible for a period of two years "following termination of service with the division,"[4] and all other candidates, who are eligible. The latter category includes state-employed attorneys representing the state as defendant, as well as private attorneys exclusively representing either employers or employees. The state offers three justifications which, it claims, serve to legitimate these classifications as a means of achieving the asserted purposes of the section.

Initially, the state argues, that the legislature "could have believed" that the attorneys excluded by section 103 are more likely to be biased than the eligible attorneys. The argument runs that section 176.261 attorneys are more likely to be convinced by the merits of an employee's argument than the other attorneys, because section 176.261 attorneys argue solely in favor of employees and are paid by the state rather than a particular client. Therefore, they are less likely to view themselves as "hired guns," and more likely as judges to favor employees over employers. Appellants respond that this argument applies with equal force to the state-employed defense attorneys, who also argue only one side of a case and are paid by the state to do so. Yet, these state attorneys are not prohibited from becoming compensation judges.

The state has not answered this argument, although one might assert that the state's defense attorneys are more closely analogous to "hired guns" than section 176.261 attorneys in that the state's defense attorneys are being paid by "their client." This is, admittedly, a weak assertion, but it serves to highlight the unpersuasiveness of the "hired gun" argument. Private attorneys who consistently represent one side in litigation, it seems to us, are just as likely to become prejudiced in favor of the merits of that side as are the state-employed attorneys. Yet, even this statement suffers from the same weakness as defendants' assertion: they are both very crude generalizations. It is singularly unpersuasive, and potentially quite destructive of the integrity of the judiciary, to distinguish among potential candidates for judicial appointment on the basis of source of salary without considering the individual candidate.

---

3. The state did not produce, nor did our own investigation reveal, any legislative history tending to support the state's assertions as to legislative purpose.

4. Act of June 1, 1981, ch. 346, sect. 103. Although we do not rest our decision upon this ground, we recognize a patent ambiguity in the statute which impinges upon its constitutionality: a literal reading of the section, including the phrase quoted in text, leads one to conclude that *every* attorney in the division must be declared ineligible for a compensation judgeship for a two-year period *after he has left the division*, because *every* division attorney once served as a petitioner's attorney. Such a result would, at the very least, seem to conflict with the new bill's general requirement that compensation judges be learned in compensation law, because it would eliminate the largest pool of qualified candidates.

The second asserted justification is that the legislature "may have legitimately believed" that section 103 would increase public confidence in the system by removing the apparent impropriety of having compensation judges deciding cases presented to them by their recent former colleagues. The state cites the federal "revolving door" regulations which prohibit some former federal employees from appearing before their former agencies in adjudicative proceedings. Yet, these conflict of interest statutes operate to bar *all* former government attorneys regardless of whose interests they represented while working at the agency. Therefore, by this logic, the state's defense attorneys should also be excluded under section 103. More importantly, the analogy is inapposite: those federal statutes are concerned with preventing conflicts of interests and the improper use of influence before a former employer and colleagues. They are not concerned with, and do not prohibit, agency attorneys becoming administrative judges, which is the relevant analogy.

Third, the state asserts that the state's interest in improving the diversity of experience of the compensation bench is rationally served by section 103: the legislature may "have rationally believed" that, because all current compensation judges previously acted as section 176.261 attorneys, and therefore "had similar backgrounds," the bias problem was compounded. Yet, as the record and oral argument revealed, most compensation judges served considerable periods of time in capacities other than as attorneys for plaintiffs: many represented the state or insurance companies prior to their appointments as judges. Therefore, their backgrounds *are* varied already. Furthermore, by permitting private attorneys to be eligible regardless of their background in workers' compensation law, the section does not operate rationally to further this asserted goal.

As in *Wegan v. Village of Lexington*, 309 N.W.2d 273, 280 (Minn.1981), we find that "[t]he statute is fatally defective * * * because it cannot satisfy *Guilliams'* first and second factors." The classifications are not genuine or relevant to the asserted statutory purposes. Moreover, we find that the distinctions which separate those included within the strictures of section 103 from those excluded are manifestly arbitrary and fanciful. For these reasons, we hold that section 103 violates the equal protection guarantees of the United States and Minnesota constitutions.

Accordingly, we reverse the order of the district court.

SHERAN, Chief Justice (dissenting).

I dissent for these reasons:

The principle that courts should be slow to declare laws unconstitutional has special force where we are dealing with legislative efforts to balance the interests of employers and employees in the field of workers' compensation created by the Legislature in the first instance and therefore uniquely subject to its authority. Particularly is this the case where, as here, adjustments to the law have been, in significant part, the product of compromise and agreement. The position of workers' compensation judge is not a public office, and this being the case, the Legislature has authority to specify reasonable qualifications for those appointed to these posts.

It is reasonable for the Legislature to prefer that the occupational experience of persons named to serve as workers' compensation judges be more diversified than has been the case in the past. Given the fact that all workers' compensation judges serving as such when the law was passed had previously been Section 176.261 attorneys at some stage in their professional careers, I believe the Legislature acted rationally in placing a limited restraint on the employment at this time of additional judges having the same kind of experience in their professional background.

PETERSON, Justice (dissenting).

I join in the dissent of Chief Justice Sheran.

SIMONETT, Justice (dissenting).

I join in the dissent of Chief Justice Sheran.