Mona Lee GLASSMAN, Appellant et al.,

v.

Craig Richard MILLER, Respondent
et al.,

No. C4–83–1084.

Supreme Court of Minnesota.

Oct. 19, 1984.

Paul T. Benshoof, Bemidji, for Glassman.

David Schueppert, Bemidji, for Mona
Glassman, appellant.

John P. Bailey, Bemidji, for Miller.

Sheldon, D. McRae, Jr., Bemidji, Cooper
S. Ashley, St. Paul, for intervenor.

Considered and decided by the court en
banc without oral argument.

TODD, Justice.

Mona Glassman and her son Jesse
brought suit for injuries received in an
automobile accident. They named Beltrami
County as a defendant, but did not serve a
notice of claim on the county as provided
by Minn.Stat. § 466.05 (1982). The trial
court granted the county's motion to dis-
miss. We reverse.

On July 13, 1981, Mona Glassman was
operating a motor vehicle in which her mi-
nor son Jesse was riding as a passenger.
Glassman contends that Craig Miller negli-
gently operated his motor vehicle, causing
her vehicle to overturn, with resulting inju-
ries to herself and her son. She also alleg-
es that the negligent design, construction
and maintenance of a county road contrib-
uted to the damages sustained by her and
her son. No notice of claim was served on
the county. At the time of the accident, a
deputy sheriff conducted an investigation
and filed a report with the Beltrami County
Sheriff's office. This appeal followed the
dismissal of the county as a defendant.

The issues are:

1. Is the notice of claim statute uncon-
stitutional?

2. Is the failure to file a notice of claim as provided by statute a jurisdictional defect?

3. Is the trial court clearly erroneous in finding that the accident investigation by the sheriff's department did not constitute actual notice to the county?

1. Minn.Stat. § 466.05 provides in part:

* * * every person who claims damages from any municipality for or on account of any loss or injury within the scope of section 466.02 shall cause to be presented to the governing body of the municipality within 180 days after the alleged loss or injury is discovered a notice stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded. * * * *No action therefor shall be maintained unless such notice has been given and unless the action is commenced within one year after such notice.* (Emphasis supplied.) [1]

Minnesota has two tort claims acts that apply to governmental units; both require that notice be given to government officials within 180 days after the alleged loss or injury is discovered. Minn.Stat. § 466.05, subd. 1 applies to tort actions brought against municipalities. "Municipality" includes cities, counties, towns, public authorities, public corporations, special districts, school districts, county agricultural societies or other political subdivisions. Minn.Stat. § 466.01 (1982). Tort claims brought against the state must comply with the notice provision set forth in Minn. Stat. § 3.736, subd. 5 (1982).

Until recently, it appeared these notice provisions were identical. A fundamental distinction was observed, however, in *Naylor v. Minnesota Daily,* 342 N.W.2d 632 (Minn.1984). The state claims act does not contain the following language which is found in the municipal statute: "No action therefor shall be maintained unless such notice has been given and unless the action is commenced within one year after such

notice." The omission of this language in the state tort claims act led the court to the conclusion that failure to give notice is not grounds for dismissal of an action against the state. 342 N.W.2d at 634.

■ In *Naylor,* the court noted that the municipal statute explicitly precludes suits for failure to give notice. The notice-of-claim requirement creates two classes of governmental tortfeasors by erecting a jurisdictional obstacle for victims of torts perpetrated by municipalities that is not encountered by victims of torts committed by the state. The question now presented is whether this distinction violates the equal protection guarantees contained in Article I, Sec. 2 of the Minnesota Constitution and the Fourteenth Amendment to the United States Constitution. These provisions require that persons similarly situated be similarly treated unless a rational basis exists for discriminating among them. *Schwartz v. Talmo,* 295 Minn. 356, 205 N.W.2d 318, (1973), *appeal dismissed,* 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973). *See Wegan v. Village of Lexington,* 309 N.W.2d 273, 280 (Minn.1981). *See also Harvey v. Clyde Park District,* 32 Ill.2d 60, 203 N.E.2d 573, 576 (1965); *Gleason v. City of Davenport,* 275 N.W.2d 431 (Iowa 1979); *Jenkins v. State,* 85 Wash.2d 883, 540 P.2d 1363 (1975).

■ We can discern no rational basis for distinguishing between municipal and state tortfeasors. Thus, the language of Minn. Stat. § 466.05 precluding the bringing of an action unless notice is given pursuant to the statute is stricken as violative of the equal protection requirements of both the state and federal constitutions.

2–3. Having decided that the statute creates an unreasonable distinction between victims of State and municipal torts, we need not consider whether the notice provision is impermissible on the ground that it creates a two-tiered statute of limitations applicable only to claimants suing a

---

1. The commencement-of-suit provision in the municipal statute was ruled unconstitutional in *Kossak v. Stalling,* 277 N.W.2d 30 (Minn.1979).

Since the court found that actual notice had been given, it did not reach the issue of the constitutionality of the notice requirement.

governmental entity.[2] We also need not rule on the issue of whether the county had actual notice.

Reversed.

SCOTT, Justice (concurring specially).

I agree with the majority that we must reverse the trial court's dismissal of this action against the county. However, I am troubled by the majority's failure to strike down the notice provisions of such statutes in their entirety. While the majority opinion cures one level of inequality—namely, the unreasonable distinction between the victims of state torts and those of municipal torts—both this case and *Naylor v. Minnesota Daily*, 342 N.W.2d 632 (Minn. 1984), accord preferential treatment to government tortfeasors. Consequently, this distinguishes between victims of governmental and private wrongdoers, in violation of the equal protection requirements of U.S. Const. amend XIV, § 1, and Minn. Const. art. 1, § 2. The majority opinion does not cure, but only complicates, the inequality involved. The addition of this complicating factor is absolutely unnecessary. Striking down the notice provision would eliminate this confusion in a clear and convincing manner.

Even where the failure to give notice is considered a non-jurisdictional defect, victims of government tortfeasors confront an impediment to recovery not faced by victims of private tortfeasors. Under *Naylor*, 342 N.W.2d at 634–35, the trier of fact must consider whether the governmental unit has been prejudiced by a lack of notice, and, if so, it can "consider the effect of the failure to receive notice in determining liability or damages." In short, by potentially affecting a litigant's recovery, these notice provisions effectively remain a trap for the unwary victim of a government tort. While that trap does not completely ensnare such a claim, it presents a pitfall that a victim of a private tortfeasor need not encounter.

Thus, contrary to the majority opinions in this case and in *Naylor*, the differential treatment accorded victims of government and private tortfeasors by these nonjurisdictional notice provisions must be scrutinized under the equal protection guarantees of the state and federal constitutions. Those provisions require that "a legislative classification apply uniformly to all those similarly situated; that the distinctions separating those who are included within the classification from those who are excluded are not arbitrary or capricious, but instead are real and substantial; and that the classification is consonant with a lawful purpose." *Kossak v. Stalling*, 277 N.W.2d 30, 34 (Minn.1979).

Significantly, this court has previously addressed the constitutionality of procedural provisions which differentiate between victims of government and private torts. In *Kossak*, we ruled that the one-year statute of limitations provided for in the Municipal Tort Liability Act, Minn.Stat. § 466.05 (1971), violated the equal protection clause of the federal constitution. 277 N.W.2d at 35. We held that there existed no rational basis for drawing a distinction between municipal and private tortfeasors and thus the claimants were entitled to the six-year limitations period enjoyed by victims of private tortfeasors. *Kossak*, 277 N.W.2d at 34–35.

Kossak exemplified this court's displeasure with the vestiges of the once disavowed doctrine of sovereign immunity. That doctrine was primarily abolished because it unjustifiably denied an injured party a remedy if the injury was caused by the tortious conduct of a government official or employee. *See Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975); *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962). In *Kossak* we strongly suggested that any statute which draws unjustifiable distinctions between government and private tortfeasors would be unconstitutional. *Kossak*, 277 N.W.2d at 34–35 n. 6.

**2.** Under *Naylor v. Minnesota Daily*, 342 N.W.2d 632 (Minn.1984) we could have held in the present case that the failure to give notice was not a jurisdictional defect.

Notice provisions such as the one at issue raise artificial barriers to a victim's recovery reminiscent of the once disavowed doctrine of sovereign immunity. While it was unnecessary for us to address the constitutionality of the notice provision in *Kossak* because the municipality had actual notice of the claim, we clearly implied in *Kossak* that the notice provision was also constitutionally infirm. 277 N.W.2d at 34–35. The validity of that notice provision is now squarely before us, regardless of whether it is considered non-jurisdictional. We should not refrain from striking it down in its entirety under the principles forwarded in *Kossak.*

KELLEY, Justice (concurring specially).

I concur in the majority opinion for the reasons stated by Justice Todd. I can ascertain no rational basis the legislature might have had for creating two separate classes of *governmental* tortfeasors by providing that victims injured by acts of those municipal government units enumerated in Minn.Stat. § 466.05, subd. 1 (1982) must commence suit within 1 year, while those victims injured by actions of the state do not encounter a similar jurisdictional obstacle.

I suggest, however, the result in this case does not necessarily portend that this court will or should declare unconstitutional, on equal protection grounds, legislation that creates different statutes of limitation or pre-suit requirements for different kinds of tort victims. Insofar as *Kossak v. Stalling,* 277 N.W.2d 30 (Minn.1979), is bottomed on a *federal* equal protection challenge, it is on very insubstantial grounds. *See* McKnight, *Minnesota Rational Relation Test: The Lochner Monster in the 10,000 Lakes,* 10 Wm. Mitchell L.Rev. 709, 713 n. 19 (1984). Insofar as *Wegan v. Village of Lexington,* 309 N.W.2d 273 (Minn.1981), rests on the equal protection guarantees contained in Article I, Section 2 of the Minnesota Constitution, the *Wegan* court departed from a long history of equating these protections with those of the fourteenth amendment to the United States Constitution. McKnight, *supra* at 725. Moreover, in doing so that court went beyond the rational relation test, where the court's inquiry is to ascertain whether legislative facts exist on which the legislature could conceivably have based the classification, to a substantive equal protection review. Whether substantive review should be employed in reviewing equal protection challenges to the legislation, absent a suspect classification or a fundamental right, is subject to considerable scholarly and judicial debate and is generally rejected. *See* McKnight, *supra* at 733–40. *See* excellent discussion of the issue in *American Bank & Trust Co. v. Community Hospital of Los Gatos-Saratoga, Inc.,* 33 Cal.3d 674, 190 Cal.Rptr. 371, 660 P.2d 829 (1983), and decision following rehearing in *American Bank & Trust Co. v. Community Hospital of Los Gatos-Saratoga, Inc.,* 36 Cal.3d 359, 204 Cal.Rptr. 671, 683 P.2d 670 (1984).

In this case, however, we need not address those issues, so I concur in the decision.