Mary Ellen HARRINGTON, Appellant,

v.

COUNTY OF RAMSEY, et al.,
Respondents,

State of Minnesota, et al., Respondents,

Dr. Thomas Comfort, M.D., Respondent,

Richard Edwards, M.D., et al.,
Defendants.

No. 48093.

Supreme Court of Minnesota.

April 20, 1979.

Michael J. Healey, St. Paul, for appellant.

Jardine, Logan & O'Brien and Richard T. Dolezal, St. Paul, for Ramsey County.

Warren Spannaus, Atty. Gen., Barbara Gill, Spec. Asst. Atty. Gen., St. Paul, for State et al.

Geraghty, O'Loughlin & Kenney and David C. Hutchinson, St. Paul, for Dr. Thomas Comfort, M.D., et al.

Heard before KELLY, TODD, and WAHL, JJ., and considered and decided by the court en banc.

TODD, Justice.

Mary Harrington fractured her right leg in 1970. She was treated by defendant Dr. Thomas Comfort at St. Paul Ramsey Hospital. Upon recovery, she was involuntarily committed to Hastings State Hospital. In 1971, she was taken to the Anoka State Hospital where her lower right leg was amputated. In 1974, she commenced this action for negligent medical treatment. The trial court granted summary judgment to all of the defendants, dismissing some because of governmental immunity, some because of the statute of limitations, and others because of failure to give the required statutory notice of claim. We reverse.

Mary Harrington is a person with a history of emotional problems complicated by addiction to drugs and alcohol. She was first committed by her parents at the age of 13. Thereafter, she apparently spent time in state institutions and halfway houses. On June 26, 1970, while residing at a halfway house, she sustained a fracture of her right leg. She was taken to St. Paul Ramsey Hospital where she was treated by Dr. Comfort and other doctors in the orthopedic ward. On August 31, 1970, she was released from the orthopedic ward and later transferred to the psychiatric ward. At this time a cast had been applied to the fracture. Mary contends the cast was applied over an open wound.

On September 8, 1970, she was involuntarily committed to Hastings State Hospital. She stated that almost immediately she began to complain of the pain in her right leg. She stated that the attending medical personnel advised her that the pain was all in her head. On September 25, 1970, she was transferred to Anoka State Hospital. At that time, the cast had been removed and Mary testified the wound on her right leg was black and odorous. She was soon returned to Hastings where medication was applied to the open wound. On

April 22, 1971, she was returned to Anoka State Hospital and her lower right leg was amputated.

Thereafter, she returned to Hastings and was subsequently released provisionally. In the summer of 1972, she worked as an aide at a nursing home. She was married in the fall of 1972 but lived with her husband for only 11 days. In February 1973, her provisional release was revoked and she was returned to Hastings.

In March 1973, she participated in a class action in Federal court, challenging the procedures used in revoking provisional discharges. Ramsey County Legal Services was representing the plaintiffs. Mary spoke with one of the lawyers and discussed her leg amputation with him. He advised that Legal Services could not represent her but he would have a lawyer contact her.

In May 1973, Mary's husband obtained a divorce. About this time she was released from Hastings and obtained part-time, temporary employment in the summer of 1973. During this summer, she had an affair and became pregnant. She later gave birth to a boy whom she cared for on her own for the next 15 months. However, she continued to require hospitalization and halfway-house care on many occasions in subsequent years because of her drug and alcohol problems.

In the fall of 1973, she signed a retainer agreement with a private attorney to proceed on her claim for damages arising out of the amputation of her leg. A notice of claim against defendants County of Ramsey, city of St. Paul, and St. Paul Ramsey Hospital was served upon them on October 9, 1973. This action for negligent medical treatment was commenced in October 1974. In September 1976, Judge Harold Schultz granted the motion of all defendants for summary judgment, except Dr. Comfort, who had not joined in the motion. The State of Minnesota prevailed under the doctrine of sovereign immunity. Defendants County of Ramsey, city of St. Paul, and St. Paul Ramsey Hospital also prevailed upon failure of plaintiff to timely serve a notice of claim upon them as required by Minn.St. 466.05, subd. 1. The medical personnel pre-

vailed by reason of the running of the 2-year statute of limitations under Minn.St. 541.07.

The motion for summary judgment was accompanied by an affidavit of Dr. Ardell Diessner, one of the defendants. He stated that he was a board certified psychiatrist at Hastings Hospital from 1966 to 1976. During this time he treated Mary Harrington on 9 separate occasions. He diagnosed her illness as schizophrenia, paranoid type, and multiple drug dependence. He further stated except for short periods of exacerbation which could be controlled by medication, Mary enjoyed long periods of stability and was capable of controlling her life. He further stated that she could make rational decisions and was capable of understanding her legal rights and assisting an attorney in representing her interests. No contrary affidavit was offered at this time. The court granted the summary judgment based on the deposition of Mary and the affidavits on file.

Thereafter, Dr. Comfort made a motion for summary judgment which was heard by Judge Otis Godfrey. On May 17, 1977, the motion of Dr. Comfort was granted based upon the running of the statute of limitations. The trial court in its memorandum accompanying its order observed that although Mary had undergone periods of mental instability off and on over an extended period of time, her contrasting periods of capacity would cause the statute of limitations to run.

A motion was subsequently made to vacate the order for summary judgment entered on September 30, 1976. This motion was heard by Judge Schultz who considered the oral arguments of counsel, the order of Judge Godfrey on May 17, 1977, the affidavit of Dr. Randall LaKosky, numerous medical records of all the hospitals involved, and all briefs and memoranda submitted. Judge Schultz denied the motion to vacate. In his memorandum accompanying his order, he considered the affidavit of Dr. LaKosky. Dr. LaKosky is a board certified psychiatrist who was then treating Mary. Dr. LaKosky first saw Mary shortly before the commencement of this litigation in October 1974. He stated he had examined her medical records dating back to the early 1960's. He stated that in his opinion Mary was incompetent from 1970 to 1974 and unable to comprehend her rights or assist her lawyer in presenting a claim. Judge Schultz found that Dr. LaKosky's conclusions as to the competency of Mary were not specific enough to convince the court that a showing of incompetence could and would be made so as to toll the statute of limitations. He concluded that Mary was capable both from the standpoint of her own intelligence and of her other activities to have exercised sufficient judgment to have brought her lawsuit within the appropriate time.

Appeal was taken from the order for summary judgment of Judge Schultz and the judgment entered pursuant thereto and from the order for summary judgment of Judge Godfrey. Appellant made a motion before this court for summary reversal and defendants made motions for summary affirmance, and we granted an oral argument on these motions. The issues before this court are:

(1) Did the plaintiff fail to perfect her appeal against Dr. Comfort by appealing from the order for summary judgment rather than the entry of summary judgment?

(2) Does the evidence of plaintiff's mental problems create a genuine issue that she was sufficiently "insane" to toll the statute of limitations?

(3) Does the state have sovereign immunity from claims based on allegedly negligent medical treatment at Hastings and Anoka State Hospitals?

(4) Is the notice of claim requirement under the Minnesota Municipal Tort Liability Act tolled under the facts of this case, and does it deprive an insane plaintiff of procedural due process or otherwise violate the constitution?

1. Defendant Dr. Comfort argues that the appeal against him should be dismissed because of a procedural infirmity. This in-

firmity arose when plaintiff appealed from the "order" granting summary judgment to Dr. Comfort rather than the actual entry of summary judgment.

■ The appeal against Dr. Comfort is technically improper. However, the technical defect does not preclude review, and therefore we decline to dismiss the appeal against Dr. Comfort.[1]

2. Minnesota has a 2-year limitation on commencement of actions for personal injury against physicians, surgeons, and hospitals, and all malpractice claims, whether based on contract or tort. Minn.St. 541.-07(1). See, generally, 1 Hamline L.Rev. 155 (discussing the various statutes of limitations in Minnesota). Minn.St. 541.15(2) suspends the period of limitation in case of insanity. Plaintiff's claim is barred by the 2-year statute of limitations unless it was tolled by reason of insanity.

The trial court found there was no genuine issue of material fact concerning the tolling of the statute of limitations, and therefore it ordered summary judgment against plaintiff. In determining whether the trial court erred, this court must answer two questions: (1) What is the meaning of "insanity" as used in § 541.15(2), and (2) is there a genuine issue of material fact concerning plaintiff's alleged insanity.

Turning to the first question, § 541.15(2) provides that the statute of limitations is tolled during the "insanity" of the plaintiff. This court has never given a detailed definition of insanity in this context, although it has briefly discussed the term in two cases. In *Kelley v. Gallup,* 67 Minn. 169, 172, 69 N.W. 812, 813 (1897), this court equated the term with "non compos," which Black's Law Dictionary defines as "not sound of mind." In *Langer v. Newmann,* 100 Minn. 27, 28, 110 N.W. 68, 69 (1907), this court indicated that persons without "legal capacity" were insane in the context of tolling the statute of limitations.

Because of the lack of precedent in Minnesota, it is relevant to examine the meaning of insanity or mental incapacity in the context of tolling the statute of limitations given by other jurisdictions. There is a variety of definitions, including the inability to understand one's legal rights or manage one's affairs;[2] the inability to understand the nature or effects of one's acts;[3] or the inability to carry out one's business and prosecute the claim.[4]

■ This discussion indicates that "insanity" in the context of tolling the statute of limitations need not be severe lunacy or idiocy. We hold that under the statute insanity means substantial inability, by reason of mental defect or deficiency, to understand one's legal rights, manage one's affairs, and prosecute the claim. As a cor-

---

1. We have consistently held that an order granting summary judgment is nonappealable as distinguished from actual entry of summary judgment which is appealable. *Credit Union of Minneapolis Board of Realtors v. Ralston,* 296 Minn. 491, 206 N.W.2d 657 (1973); *LeRoy v. Figure Skating Club of Minneapolis,* 281 Minn. 576, 162 N.W.2d 248 (1968). However, because plaintiff's appeal was filed after judgment was actually entered on the order, the appeal was not premature but rather only technically deficient.

Plaintiff's counsel states this procedural infirmity was due to his mistake, inadvertence, and error. In *Helm v. El Rehbein & Son, Inc.,* 257 N.W.2d 584, 585, n. 1 (Minn.1977), we stated: " * * * Mere formal defects or clerical errors should be disregarded where they are not misleading and do not prejudice the respondents in any way, and this court, in its discretion, may consider the matter on its merits." Accord *Theis v. Theis,* 271 Minn. 199, 200, 135 N.W.2d 740, 742, n. 1 (1965); *In re Estate of Hore,* 220 Minn. 365, 369, 19 N.W.2d 778, 781 (1945), second appeal, 222 Minn. 197, 23 N.W.2d 590 (1946). Dr. Comfort was not prejudiced by the technical defect. His counsel received notice of the appeal, and he has participated in this appeal.

2. *Allen v. Powell's Int'l, Inc.,* 21 Ariz.App. 269, 270, 518 P.2d 588, 589 (1974); *Collins v. Dunifon,* 163 Ind.App. 201, 208, 323 N.E.2d 264, 269 (1975); *Davidson v. Baker-Vander Veen Construction Co.,* 35 Mich.App. 293, 302, 192 N.W.2d 312, 316, n. 4 (1971).

3. *Peach v. Peach,* 73 Ill.App.2d 72, 81, 218 N.E.2d 504, 509 (1966); *Hornig v. Hornig,* 78 Mass.App. 208, 211, 374 N.E.2d 289, 291 (1978).

4. *Cline v. Lever Bros. Co.,* 124 Ga.App. 22, 183 S.E.2d 63 (1971).

ollary to this rule, we conclude that short, temporary occasions of mental illness are sufficient to toll the statute on the basis of "insanity" only if such short occasions substantially impair the general ability of the plaintiff to understand her rights, manage her affairs, and prosecute the claim. This determination of substantial impairment depends upon the duration of the mental illness or defect as compared to the time within which suit must be brought.

■ Applying this definition of "insanity", the next question is whether there is a genuine issue of material fact concerning plaintiff's alleged insanity and tolling of the statute of limitations. Plaintiff's mere assertion of insanity to toll the statute of limitations does not create a factual dispute to be resolved by the jury.[5] Instead, the entire record must be examined. Based on the record, the trial court found there was no genuine issue of material fact. We disagree.

Defendants rely on certain evidence in an attempt to demonstrate no genuine issue concerning plaintiff's alleged insanity. The record indicates that plaintiff had spoken with attorneys in 1973, one specifically with regard to her leg. Although there appears to be no Minnesota cases on point, cases from other jurisdictions indicate that retention of counsel is evidence, although not conclusive, of a person's sanity or legal capacity for the purpose of the running of the statute of limitations. See, *Collins v. Dunifon,* Ind.App., 323 N.E.2d 264 (1975); *Hill v. Clark Equip. Co.,* 42 Mich.App. 405, 202 N.W.2d 530 (1972).

There is also the affidavit of Dr. Diessner. Although we realize that he is a defendant in this case, we must consider his statements that plaintiff had long periods of normalcy and was capable of managing her own affairs. He conceded, however, that plaintiff was occasionally "delusional, hallucinatory, disorganized and out of contact with reality."

There are other matters in the record which we must consider. There are affidavits of others who observed her during the period in question and plaintiff's own deposition. These indicate that plaintiff had married, worked, conducted many day-to-day transactions, and cared for her newborn child.

■ Plaintiff, on the other hand, relies on other evidence in an attempt to demonstrate a genuine issue of fact. Plaintiff points to the evidence that she was involuntarily committed on and off during the alleged running of the statute, that she has been an in-patient numerous times at various hospitals since 1972 for mental illness, and that the affidavit of Dr. LaKosky, who has intermittently treated plaintiff since 1974, indicates she was unable to manager her affairs or comprehend her legal rights. With regard to the fact of her commitment for mental illness, Minn.St. 253A.18 provides in part:

"* * * Commitment, hospitalization, or treatment of any patient pursuant to sections 253A.01 to 253A.21 is not a judicial determination of legal incompetency * * *."

The commitments are, therefore, not conclusive of incompetency. The commitments and in-patient treatment are only evidence of insanity. See, *Schultz v. Oldenburg,* 202 Minn. 237, 244, 277 N.W. 918, 922 (1938). Cf. *Johnson v. Johnson,* 214 Minn. 462, 8 N.W.2d 620 (1943) (appointment of a guardian is evidence of incompetency).

■ The evidence of treatment in this case is persuasive in demonstrating a genuine issue of fact. The facts before the trial court present a continuing pattern of serious mental illness, spanning 1970 through 1974, which casts doubt on plaintiff's ability to understand her rights, manage her affairs, and prosecute her claim. During the period commencing a month before plain-

---

5. In Michigan, the rule is that a specific assertion of insanity to toll the statute of limitations creates a factual issue which usually is not appropriate for summary judgment and which must be resolved by the jury. See, *Van Buren v. B. J. Moving & Storage, Inc.,* 54 Mich.App. 266, 220 N.W.2d 746 (1974); *Davidson v. Baker-Vander Veen Construction Co.,* 35 Mich. App. 293, 192 N.W.2d 312 (1971). We decline to accept such a rule.

tiff's accident, she was admitted to the St. Paul Ramsey Hospital psychiatric ward on four occasions for attempted suicide and, after the fourth attempt, was committed involuntarily to Hastings State Hospital from September 8, 1970, to January 12, 1972, at which time she was only provisionally discharged. Only a week later she was again hospitalized for in-patient treatment for mental illness. She continued intermittently to be hospitalized in January, February, April, May, August, and December of 1972, for about 45 weeks in 1973, and for about 45 weeks in 1974.

Plaintiff also relies on the affidavit of Dr. LaKosky. He stated:

"Her chronic depression, her chronic chemical dependency on prescription drugs, her seizure disorder would lend me to be of the professional opinion that from 1970 to 1974 Miss Harrington was unable to assist her lawyer in any adequate way toward the preparing of her malpractice case.

\* \* \* \* \* \*

"Further, in conclusion it is my professional opinion that she was incapable of managing her affairs with respect to the institution and maintenance of any claim for relief, and that she was incapable of comprehending rights which others would exercise routinely."

Defendants attack the affidavit on the grounds that Dr. LaKosky had not seen plaintiff during the time period but had merely examined her medical records for this period. We find no merit to this contention since experts traditionally render opinions based on matters other than personal observation. Thus, Dr. LaKosky's affidavit is properly before us and it does indicate the plaintiff did have some mental problems during the time period.

■ We must review the evidence in a manner that is favorable to the plaintiff, the nonmoving party. *Vieths v. Thorp Finance Co.,* 305 Minn. 522, 232 N.W.2d 776 (1975). We conclude that a genuine issue exists as to plaintiff's sanity during the entire period of 1970 to 1974. Therefore, summary judgment on the basis of the statute of limitations was inappropriate.[6]

3. One of the defendants in this suit is the State of Minnesota. Plaintiff alleges the state is liable for the allegedly improper treatment at Hastings State Hospital and Anoka State Hospital. The state argues the doctrine of sovereign immunity precludes any liability.

■ The cause of action in this case arose prior to August 1, 1976, the date from which sovereign immunity was abolished by *Nieting v. Blondell,* 306 Minn. 122, 235 N.W.2d 597 (1975). Thus, the state is not liable for any improper treatment if the activities at Hastings State Hospital and Anoka State Hospital are "governmental" rather than "proprietary" in nature. See, *Susla v. State,* 311 Minn. 166, 247 N.W.2d 907 (1976).

The question of the governmental immunity of the State of Minnesota in this case is controlled by our recent decision in *Papenhausen v. Schoen,* 268 N.W.2d 565 (Minn. 1978). We there stated (268 N.W.2d 570):

"\* \* \* Minn.St. 253.015 designates several state hospitals whose specific function is to provide care for the mentally ill, and the state hospital at Anoka is among those named in the statute. It could scarcely be argued that these state mental institutions compete with private establishments. And while it is true that some patients or their relatives are required to pay for a portion of their care (see, Minn.St. 246.50 et seq.), the statute is structured in such a way as to ensure that a state hospital could never even approach a profitmaking status.

---

**6.** Plaintiff's broken leg was treated in July 1970, and it was amputated in April 1972. At that time, Minn.St. 541.15 provided that the disability of insanity tolled the statute only if it existed *at the time* the cause of action accrued, and that the statute began to run upon removal of the disability. It was not until 1974 that the statute was amended to provide that insanity would toll the statute even if it arose *after* the cause of action accrued and during the running of the statute. L.1974, c. 384, § 2. Our holding is not affected by the 1974 amendment.

"Accordingly, we hold that the operation of the state hospital is a governmental function and that the district court correctly granted summary judgment in favor of the defendant State of Minnesota."

The hospital at Hastings as well as the Anoka Hospital are listed in Minn.St. 253.015. Therefore, under the *Papenhausen* case, the state is immune from liability for the alleged negligence occurring at the Anoka and Hastings State Hospitals.

Counsel for plaintiff argues that we should distinguish *Papenhausen* and limit its application to the furnishment of treatment of mental problems as opposed to the treatment of physical ailments. We note that under Minn.St. 246.014(2), the measure of services to be provided at state hospitals includes the care of physical illness by adequately trained persons so as to put into practice modern methods of medicine. Following the rationale of the *Papenhausen* case, we conclude that the medical treatment as well as psychiatric care at Anoka and Hastings State Hospitals involve a governmental function. We decline to distinguish between treatment of mental and physical illnesses at the Anoka and Hastings State Hospitals.

Two of the defendants sued by plaintiff include the city of St. Paul and Ramsey County based on allegedly negligent medical treatment at Ramsey Hospital. The trial court granted summary judgment for St. Paul and Ramsey County because plaintiff failed to comply with the notice of claim requirement under the Minnesota Municipal Tort Liability Act, Minn.St. 466.05. Plaintiff argues the notice requirement was tolled and that it is unconstitutional.

We need not now decide the issue of whether the notice requirement may be tolled by insanity or whether it is unconstitutional. We will not decide an issue which has potential ramifications of declaring a statute unconstitutional unless necessary to our disposition of the case. *State v. North Star Research & Develop. Institute,* 294 Minn. 56, 200 N.W.2d 410 (1972). Plaintiff might be found to have not been "insane."

If so, the issues concerning the notice of claim requirement will become moot because plaintiff's claim would be barred by the statute of limitations.

We remand this case for further proceedings not inconsistent with this opinion without prejudice to plaintiff's right to have this court review the issues concerning the notice of claim requirement in the event she is found "insane" under the statute of limitations. We also observe that the record needs further development on the issues concerning the notice of claim requirement, particularly in view of doubt recently cast upon the constitutionality of this requirement by decision of this court and other authorities. See, *Kossak v. Stalling,* 276 N.W.2d 30 (Minn.1979), 1979; Note, 4 Wm. Mitchell L.Rev. 93.

Reversed and remanded.

OTIS, J., took no part in the consideration or decision of this case.