Norman R. LARSON, Appellant,

v.

STATE of Minnesota, Respondent,

Kandiyohi County, Defendant.

No. C6-89-1309.

Court of Appeals of Minnesota.

Feb. 6, 1990.

John E. Mack, New London, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., David T. Schultz, Special Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by CRIPPEN, P.J., and KLAPHAKE and FLEMING, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant was questioned pursuant to a murder investigation. He brought suit against the state and county claiming the law enforcement officers' conduct during the investigation was outrageous and their comments to a reporter slandered him. Claims against the county were settled out of court. The state moved for summary judgment on the grounds (1) the claims were barred by the statute of limitations, (2) the alleged defamatory statements were true and not defamatory as a matter of law, and (3) the state's conduct was not outrageous as a matter of law. The trial court granted the state's motion, and appellant appeals.

## FACTS

Scriver Olson was found murdered in his home in rural Kandiyohi County on Febru-

ary 18, 1983. Appellant Norman Larson, a neighbor and friend of Olson, was questioned by authorities a number of times during the following year in connection with the murder. In the course of the investigation, conducted by the Kandiyohi County Sheriff's Department and the State Bureau of Criminal Apprehension (BCA), appellant became a principal suspect.

Interviews with appellant took place over the phone, at appellant's home, in the victim's home, at the cemetery where the victim was buried and at the Holiday Inn in Willmar. On two occasions, in February and March 1983, authorities requested, and appellant consented to give them, several items of clothing and personal property to be sent to the BCA lab for testing. Appellant alleges that on September 27, 1983, in the presence of a reporter, BCA agent Sigafoos slandered appellant by stating he was the "number one suspect" in the case, and that most of the BCA file on the case contained information about appellant. Appellant further alleges that the authorities harassed him by their phone calls night and day and by telling him "the spirit of Scriver Olson would haunt him forever unless he confessed." Appellant also claims the tactics of the authorities were "designed to prey on his mental weaknesses," a mental fragility evidenced by appellant's temporary commitment in 1981 to the Willmar State Hospital.

Pursuant to Minn.Stat. § 3.736, subd. 5 (1984), appellant filed notice of his tort claims with the State Attorney General (respondent). Notice was served in July 1985, although commencement of the action by service of the summons and complaint was not accomplished until December 19, 1985. Respondent denied the allegations of defamation and outrage. The parties, however, agreed to suspend discovery indefinitely because the murder investigation had not yet been completed.

Appellant filed a certificate of readiness in January 1987, and, upon a court order, filed a more definite statement setting forth the alleged defamatory statement and the date upon which it was uttered. The case was transferred from Ramsey County to Kandiyohi County in June 1988. In September 1988, the trial judge ordered the parties to proceed with discovery. Appellant's deposition was taken on October 17 and November 25, after which respondent moved to amend its answer in order to plead the statute of limitations. The court granted the motion and discovery was continued.

Respondent's motion for summary judgment was heard on February 15, 1989. The trial court granted the motion on all claims, and appellant brings this challenge.

## ISSUES

I. Did the trial court err in holding appellant's tort claims were barred by the two year statute of limitations period set forth in Minn.Stat. § 541.07(1)?

II. If the statute of limitations does not bar appellant's claims, did the trial court err in granting respondent's motion for summary judgment because it found no facts in dispute on the issues of defamation and intentional infliction of emotional distress?

## ANALYSIS

On appeal from summary judgment it is the function of the reviewing court to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). This court "must take a view of the evidence most favorable to the one against whom the motion was granted." *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954) (citations omitted).

Actions for "libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury" shall be commenced within two years after the cause of action accrues. Minn.Stat. § 541.07(1) (1984). *See also* Minn.Stat. § 541.01. The events giving rise to appellant's action for defamation and intentional infliction of emotional distress occurred between February and November 1983, with the exception of police calls to appellant in March 1984 in regard to a fire at Scriver Olson's home.

Appellant served his summons and complaint on the state in December 1985, more than two years after all but one of the investigative actions at issue.

Appellant contends the statute of limitations does not apply because (1) it was tolled by appellant's mental disability and (2) the notice provision of the Minnesota Tort Claims Act acts as a statutory bar to the suit. Appellant also argues the trial court erred in allowing respondent to amend its answer in December 1988 to assert the statute of limitations defense.

A plaintiff's insanity, if "existing at the time when a cause of action accrued or arising anytime during the period of limitation, shall suspend the running of the period of limitation until the same is removed." Minn.Stat. § 541.15(2) (1984).

> [I]nsanity means substantial inability, by reason of mental defect or deficiency, to understand one's legal rights, manage one's affairs, and prosecute the claim. As a corollary to this rule, we conclude that short, temporary occasions of mental illness are sufficient to toll the statute on the basis of "insanity" only if such short occasions substantially impair the general ability of the plaintiff to understand her rights, manage her affairs, and prosecute the claim. This determination of substantial impairment depends upon the duration of the mental illness or defect as compared to the time within which suit must be brought.

*Harrington v. County of Ramsey*, 279 N.W.2d 791, 795–96 (Minn.1979).

■ Despite the fact that appellant was committed to the State Hospital for a short time in 1981, Dr. Andrew Leemhuis concluded in September 1988 that "[f]rom a routine neurologic standpoint [appellant was] entirely normal." Dr. Leemhuis said tests revealed appellant was under considerable stress and exhibited "a paranoid tendency with delusions and emotional instability," but there was no confirmation of appellant's assertion that he was or is insane so as to toll the statute of limitations.

■ Nor does the notice provision of Minn.Stat. § 3.736, subd. 5 toll the limitations period. The statute provides:

> [E]very person * * * who claims compensation from the state * * * shall present to the attorney general * * * and any state employee from whom the claimant will seek compensation, within 180 days after the alleged loss or injury is discovered, a notice stating the time, place and circumstances thereof, the names of any state employees known to be involved, and the amount of compensation or other relief demanded. Actual notice of sufficient facts to reasonably put the state or its insurer on notice of a possible claim complies with the notice requirements of this section. Failure to state the amount of compensation or other relief demanded does not invalidate the notice, but the claimant shall furnish full information available regarding the nature and extent of the injuries and damages within 15 days after demand by the state. The time for giving the notice does not include the time during which the person injured is incapacitated by the injury from giving the notice.

*Id.*

This notice requirement "provides the government with an early opportunity to investigate claims, facilitates settlement without litigation, allows the government to correct defects revealed before further injury occurs and protects against stale and fraudulent claims." *Naylor v. The Minnesota Daily*, 342 N.W.2d 632, 634 (Minn. 1984) (citing *Hirth v. Village of Long Prairie*, 274 Minn. 76, 79, 143 N.W.2d 205, 207–08 (1966)). Although the statute requires a claimant to give proper notice, it does not require that there be a delay between presentation of the claim and commencement of the suit. In fact, the only time requirement of section 3.736 is the requirement that notice of a possible claim be furnished within 180 days of the accrual of the cause of action.

Appellant argues it is inconsistent to allow respondent to invoke the statute of limitations defense when it did not complain about appellant's non-compliance with the 180 days notice provision. According to *Naylor* and *Glassman v. Miller*, 356 N.W.2d 655 (Minn.1984), however, the no-

tice provision *cannot* be enforced, at least to the extent of dismissing the case for failure to bring timely notice. *Cf. Glassman*, 356 N.W.2d at 655. ("[P]recluding the bringing of an action unless notice is given pursuant to the [Municipal Tort Claims Act] is stricken as violative of the equal protection requirements of both the state and federal constitutions, [because] * * * the statute creates an unreasonable distinction between victims of state and municipal torts.") In addition, appellant never specified the dates of the tortious acts until his deposition was taken in the fall of 1988. Respondent would not necessarily have known whether the alleged slander and outrage constituted a continuing tort or whether the acts occurred more than 180 days before notice was given.

■ Finally, appellant argues that respondent's motion to amend its answer late in 1988, three years after commencement of the action and nearly two years after appellant filed a certificate of readiness to stand trial, in order to include the statute of limitations defense, was merely a delay tactic that should not have been allowed by the trial court.

Under Rule 15 of the Minnesota Rules of Civil Procedure a party may amend pleadings after a responsive pleading has been served only by leave of court or the written consent of the adverse party. Minn.R. Civ.P. 15.01.

> Whether leave should be given in a particular case depends upon a number of factors, including, in particular, prejudice to the adverse party. (citations omitted) Prejudice to the adverse party can be weighed against prejudice to the moving party if leave is denied.

*Wilson v. City of Eagan*, 297 N.W.2d 146, 151 (Minn.1980) (citations omitted).

Appellant makes no showing of prejudice following the court's order allowing respondent's amendment of its answer. In addition, the court continued discovery for two months and rescheduled the hearing on the motion for summary judgment in an effort to lessen the possibility of prejudice to appellant. We find no error by the trial court.

Appellant's tort claims are clearly barred by the statute of limitations in Minn.Stat. § 541.07(1). Because of our decision on this issue we decline to review appellant's claims that the court erred in granting respondent's motion for summary judgment when there were factual issues in dispute concerning the alleged defamation and intentional infliction of emotional distress.

### DECISION

The trial court did not err in finding that neither appellant's mental disability nor the notice provision of the Tort Claims Act tolled the statute of limitations on appellant's claims for defamation and intentional infliction of emotional distress. The court also properly granted respondent's motion to amend its answer after a responsive pleading had already been served. We affirm the trial court decision.

Affirmed.