**L.A.B., Appellant,**

v.

**P.N., Defendant,**

**H.C., Respondent.**

No. C6–95–105.

Court of Appeals of Minnesota.

June 27, 1995.

Laurel E. Learmonth, Craig L. Engwall, Primus Law Office, Minneapolis, for appellant.

Barry Vermeer, Gislason Law Firm, Minnetonka, for defendant.

David C. Hutchinson, Ann D. Bray, Geraghty, O'Loughlin & Kenney, St. Paul, for respondent.

Considered and decided by HARTEN, P.J., and RANDALL and HOLTAN,* JJ.

## OPINION

HARVEY A. HOLTAN, Judge.

Appellant L.A.B. commenced a medical malpractice action against her former psychiatrist P.N. and her former psychiatric care clinic, respondent H.C. The clinic moved for summary judgment by reason of expiration of the two-year statute of limitations. *See* Minn.Stat. § 541.07(1). L.A.B. contended that her disability of insanity suspended running of the statutory limitation period. *See* Minn.Stat. § 541.15(a)(2). The trial court entered summary judgment in favor of the clinic, and L.A.B. appealed. We affirm.

## FACTS

Respondent H.C. (the clinic) is an outpatient clinic that provides professional psychiatric services. Appellant L.A.B. sought therapy at the clinic for problems arising from sexual and emotional abuse she suffered as a child. P.N. was employed by the clinic as a psychiatrist until April 7, 1992. She administered psychiatric care to L.A.B. from November 1989 to March 2, 1992.

During the course of L.A.B.'s treatment, she became physically and romantically attracted to P.N. P.N. explained to her that such attraction is a function of therapy resulting from "transference," a process whereby a patient transfers to the psychiatrist emotions previously experienced with another person.

Approximately eight months after L.A.B.'s final therapy session at the clinic, she and P.N. began a "very romantic and sexual relationship." She promised P.N. that she would keep the relationship confidential. P.N. concealed L.A.B.'s identity from her husband

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant Minn. Const. art. VI, § 10.

and children, and L.A.B. concealed P.N.'s identity from her partner. The clandestine and professionally unethical nature of the relationship eventually caused L.A.B. to experience anxiety.

L.A.B. terminated the relationship in August of 1993. She gradually became depressed and sought counseling. She began attending weekly sessions with therapist Ellen Luepker. Luepker asked L.A.B. if she wanted to file a complaint against P.N. L.A.B. replied on January 16 that she needed to resolve her problems "from within, not in the courts." She contemplated reporting P.N. to the medical board, but did not want to breach her promise to P.N. to keep the relationship confidential.

Luepker testified by affidavit that transference inhibited L.A.B. from commencing an action because it caused her to assume responsibility for P.N.'s welfare, and caused her to experience guilt about "what she had done to P.N." L.A.B. feared that filing a report would cause revocation of P.N.'s license to practice medicine, destroy her marriage, and tarnish her reputation within the medical community.

L.A.B.'s mental health deteriorated and she became suicidal. At the time, she was employed during the week as a chemical dependency counselor. She also worked as a family counselor during alternate weekends. Her weekly supervisor suggested that she take a leave of absence due to her mental condition. She began to receive outpatient group therapy on February 15. She decided not to enter inpatient psychiatric care for fear it may jeopardize her career or cause her to lose custody of her child.

L.A.B. attended outpatient therapy six hours per day for three weeks. A therapist reported on February 18 that L.A.B. contemplated filing a civil suit against P.N. to recoup financial losses caused by their relationship. The therapist also reported that L.A.B. felt professionally obligated to report P.N. to the medical board. L.A.B. arranged a meeting with P.N. and therapist Luepker to discuss whether P.N. would first self-report to the board.

Approximately one week later, L.A.B. drafted and filed an eight-page complaint with the medical board. The complaint describes her childhood problems, her therapy sessions with P.N., the progression of their relationship, her resulting emotional problems, and her reasons for reporting. She recounts her discussion with P.N. about transference, and acknowledges that she knew the relationship was professionally unethical.

When L.A.B.'s outpatient therapy terminated on March 7, Luepker wrote that L.A.B. could return to her job and perform her duties. Her therapy report quotes L.A.B. as stating, "I'm not sure if I'm ready to decide to file legal charges or not, but I'm under time pressures because the statute of limitations is out at the end of the month." According to her discharge from therapy report, she decided during therapy to consult an attorney to determine when the statute of limitations would expire.

L.A.B.'s complaint is dated April 11, 1994, and alleges that the clinic (1) negligently failed to supervise P.N., (2) failed to warn L.A.B. about problems with P.N., (3) breached an implied warranty of services, and (4) is vicariously liable. The trial court granted the clinic's summary judgment motion.

## ISSUE

Did the trial court err in ruling as a matter of law that L.A.B.'s alleged mental disability is insufficient under section 541.15(a)(2) to suspend the running of the statute of limitations?

## ANALYSIS

On appeal from summary judgment, we review the record to determine "(1) whether there are genuine issues of material fact and (2) whether the trial court erred in applying the law." *Oak Park Dev. v. Snyder Bros. of Minn., Inc.,* 499 N.W.2d 500, 504 (Minn.App.1993). We view the evidence most favorably to the party against whom summary judgment was entered. *Offerdahl v. University of Minn. Hosp. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

This court will not set aside the trial court's factual findings unless clearly erroneous. Minn.R.Civ.P. 52.01. The trial court did not, however, issue separate factual findings in support of summary judgment. We may nevertheless affirm judgment in the absence of findings if "the record is reasonably clear and the facts not seriously disputed." *Bettes v. Fuel–Scott,* 415 N.W.2d 409, 411 (Minn.App.1987) (quoting *Roberson v. Roberson,* 296 Minn. 476, 478, 206 N.W.2d 347, 348 (1973)).

■ The record is clear, and the facts are not seriously disputed. For purposes of this review, we accept as true L.A.B.'s version of the determinative facts. In reviewing legal conclusions based on undisputed facts, we independently apply the facts to applicable statutory language. *City of St. Paul v. Spencer,* 497 N.W.2d 305, 307 (Minn.App. 1993), *pet. for rev. denied* (Minn. Apr. 20, 1993).

■ A malpractice action against a health care provider generally must be commenced within two years from the date such action accrues. Minn.Stat. § 541.07(1) (1992). P.N.'s final date of employment at the clinic was April 7, 1992. L.A.B.'s claims against the clinic would have necessarily arisen during her therapy at the clinic, which occurred between 1989 and March 1992. She did not commence the action until April 11, 1994, more than two years after the action accrued.

Running of the limitation period is suspended during periods of disability, such as "insanity." Minn.Stat. § 541.15 (1992). To toll the limitation period, the disability must be present when the cause of action accrued, or anytime during the period of limitation. *Id.* at (a). L.A.B. contends that she was disabled by insanity during the early months of 1994.

"Insanity" for purposes of section 541.15(a)(2)

means substantial inability, by reason of mental defect or deficiency, to understand one's legal rights, manage one's affairs, and prosecute the claim.

*Harrington v. County of Ramsey,* 279 N.W.2d 791, 795 (Minn.1979). A temporary occasion of mental disability will not toll the limitation period unless it "substantially impair[s] the general ability of the plaintiff to understand her rights, manage her affairs, and prosecute the claim." *Id.* at 796.

In *Harrington,* the supreme court reversed summary judgment and ruled that "persuasive" evidence of appellant's treatment demonstrated a genuine issue of fact. *Id.* Facts before the trial court showed a "continuing pattern of serious mental illness" which cast doubt on appellant's ability to manage her affairs, understand her rights, and prosecute her claim. *Id.*

The appellant in that case was injured at a state hospital, where she had been committed involuntarily. *Id.* at 793. She had a history of emotional problems complicated by alcohol and drug addiction, and had spent time in state institutions and halfway houses since age 13. *Id.* Near the time of her injury, she was admitted to psychiatric wards four times for attempted suicide, after which she was committed to a hospital involuntarily for 16 months. *Id.* at 796–97. She was granted a provisional release, yet rehospitalized within only one week for inpatient treatment for mental illness. *Id.* at 797. She was hospitalized intermittently in the six months following her injury, and for 45 weeks in each of the following two years. *Id.*

The present case is distinguishable for several reasons. Unlike the appellant in *Harrington,* L.A.B. was not involuntarily committed for inpatient hospital care.[1] More importantly, she does not exhibit a "continuing pattern of serious mental illness." *Id.* at 796. To the contrary, evidence demonstrates that during the period of her alleged disability, L.A.B. understood her rights, managed her affairs, and was able to prosecute her claim.

■ In January of 1994, she told her therapist that she wanted to resolve her problems "from within" rather than file a complaint in court. In February, she contemplated filing a civil suit to recoup financial

---

1. We note that involuntary commitment is not a judicial determination of competency to commence an action. Minn.Stat. § 253B.23, subd. 2 (1992).

losses. She was discharged from outpatient therapy in March. The discharge report states that she decided during therapy to consult an attorney to determine when the statute of limitations would expire. Retention of counsel is evidence, although not conclusive, that an individual is "sane" for purposes of section 541.15(a)(2). *Harrington,* 279 N.W.2d at 796.

In March, L.A.B. wrote that she was uncertain about filing legal charges, and explained "I'm under time pressures because the statute of limitations is out at the end of the month." The above evidence shows that L.A.B.'s mental condition did not substantially impair her ability to understand her legal rights. She understood during the period of her alleged disability that there was a time limit for commencing legal action.

There is also evidence that L.A.B. was not substantially impaired in her ability to manage her affairs. She cared for her child during therapy, lived independently, and secured a loan for the purchase of a home. *See Patton v. Yarrington,* 472 N.W.2d 157, 161 (Minn.App.1991) (affirming summary judgment where appellant shared an apartment and thus, in the absence of contrary evidence, was capable of providing for himself and managing his affairs), *pet. for rev. denied* (Minn. Aug. 29, 1991). In addition, she maintained her employment as a chemical dependency counselor, and as a family counselor. Her therapist determined after three weeks of therapy that she was able to return to work and perform her duties as a counselor.

L.A.B. made rational decisions and understood the consequences of her decisions. She elected to receive outpatient therapy rather than inpatient therapy so she would not jeopardize her professional career or lose custody of her child. Initially, she decided not to file a complaint with the medical board because she was concerned that doing so would breach her promise of confidentiality. She was also concerned that filing a complaint would disrupt P.N.'s marriage, harm her reputation, and cause revocation of her license to practice medicine. One week into therapy, she determined that she was obligated as a chemical dependency counselor to

report P.N. to the medical board. She also decided to consult an attorney.

L.A.B. acknowledged that she knew her relationship with P.N. was professionally improper. She arranged a meeting between herself, therapist Luepker, and P.N. She drafted and filed an articulate, detailed eight-page complaint in which she describes her childhood problems, her therapy sessions with P.N., the progression of their relationship, resulting emotional problems, and her reasons for reporting. One of her stated reasons for reporting was "to protect other potential victims."

Therapist Luepker submitted an affidavit stating that in her professional opinion, L.A.B. was incapable of prosecuting her claim during her relationship with P.N. due to an "intense transference response" which caused her to feel a need to protect P.N. Luepker also states that L.A.B.'s loyalty to P.N. caused her to be "conflicted about what action to take" after their relationship terminated. These conclusions are inconsistent with the fact that L.A.B. drafted and filed her detailed complaint with the medical board *before* the statute of limitations expired.

This evidence clearly shows that L.A.B.'s mental condition and her ability to understand her legal rights were not substantially impaired. Her knowledge of her legal rights was logical and acute, right down to knowing exactly when the statute of limitations would bar her claim. Her actions manifest no volitional impediment.

Although L.A.B. testified that she was depressed and suicidal, there is no evidence that she was legally disabled by "insanity" under section 541.15(a)(2). In the absence of evidence that she was substantially impaired in her ability to understand her rights, manage her affairs, and prosecute her claim, her sense of responsibility for and loyalty to P.N. caused by a transference response to therapy are insufficient as a matter of law to toll the statute of limitations. *See Larson v. State,* 451 N.W.2d 213, 215 (Minn.App.1990) (affirming summary judgment where no confirmation of appellant's assertion that he was insane so as to toll the statute of limitations).

L.A.B. contends that the trial court erred by dismissing her failure to warn and vicarious liability claims. Her final therapy session at the clinic occurred on March 2, 1992, and P.N.'s employment relationship with the clinic terminated on April 7, 1992. The trial court properly dismissed all claims, since any claim against the clinic based on conduct by P.N. was required to be commenced no later than April 7, 1994.

## DECISION

There is no evidence that L.A.B. was substantially impaired in her ability to understand her rights, manage her affairs, or prosecute her claim prior to expiration of the statutory limitation period. There is persuasive contrary evidence. Because there is no genuine issue of material fact to warrant a trial, we affirm the trial court's grant of summary judgment in favor of the clinic.

**Affirmed.**