**Michael MALONEY, et al., Appellants,**

v.

**DAKOTA COUNTY RECEIVING CENTER, INC., Respondent,**

**Dakota County Social Services, Respondent.**

**No. C6–96–1541.**

Court of Appeals of Minnesota.

March 18, 1997.

Review Denied May 20, 1997.

William D. Harper, Woodbury, and Mary Mason, St. Paul, for Appellants.

James M. Mahoney, Mahoney, Dougherty & Mahoney, P.A., Minneapolis, for Respondent Dakota County Receiving Center, Inc.

Kenneth A. Malvey, Assistant County Attorney, Dakota County Judicial Center, Hastings, for Respondent Dakota County Social Services.

Considered and decided by CRIPPEN, P.J., TOUSSAINT, C.J. and HARTEN, J.

## OPINION

CRIPPEN, Judge.

In this malpractice suit brought by appellants Michael and Linda Maloney, we must determine whether a detoxification facility constitutes a hospital for purposes of Minn. Stat. § 541.07 (1996). We affirm the trial court's application of this statute of limitations to the case.

## FACTS

In October 1992, Michael Maloney's judicial commitment was conditionally stayed. On February 10, 1993, after a drinking binge, Maloney voluntarily admitted himself for detoxification services at the Dakota County Receiving Center's Category I Rehabilitation Program.

Maloney contends the Receiving Center and Tom Agar, a public welfare social worker, thereafter deprived him of his Valium prescription. Maloney alleges that a doctor had prescribed the Valium to treat his chronic vertigo, that this condition worsened after the drug was withdrawn, and that he then became dizzy and fell on the Receiving Center's premises on February 11. The Receiving Center denies that appellant fell on-site. Agar denies involvement in any decision regarding Maloney's medication.

Maloney and his family allege that they repeatedly requested medical attention for Maloney in the days following his fall, but he was deprived of medical care for nine days. He complained about headaches, numbness in his appendages, and hearing, speech, and vision difficulties.

On February 20, after proceedings had begun to revoke the stay of Maloney's prior commitment, he was transferred to Regina Hospital. It was then learned that Maloney had suffered a subdural hematoma requiring surgery to relieve pressure on his brain and that he had suffered permanent brain damage.

Maloney brought an action for "medical negligence" in February 1995. He brought the action pro se and evidently had copied the language from a medical malpractice complaint in a different lawsuit. Subsequently, Maloney retained legal counsel and dismissed his first suit without prejudice. In August 1995, Maloney alleged negligence in a new suit commenced against the Receiving Center and Social Services. This appeal follows the trial court's summary judgment for the defendants in that suit.

## ISSUES

Did the trial court err by applying the medical malpractice statute of limitations for the Receiving Center?

## ANALYSIS

■ We review de novo appellant's contention that the trial court misinterpreted the law. *Dohman v. Housely,* 478 N.W.2d 221, 224 (Minn.App.1991) (citing *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 581 (Minn. 1977)), *review denied* (Minn. Feb. 11, 1992).

### 1. Statute of Limitations

Most negligence claims in Minnesota are governed by a six-year statute of limitations. Minn.Stat. § 541.05, subd. 1 (1996). But the statute of limitations period is two years for all "hospitals" and "sanitariums" for acts of "malpractice, error, mistake or failure to cure." Minn.Stat. § 541.07(1) (1996). To determine whether the two-year statute applies, we must decide whether the defendant is among those named in the statute and whether the action is one for malpractice. *Kaiser v. Memorial Blood Ctr.,* 486 N.W.2d 762, 765 (Minn.1992).

### a. Classification of facility

■ The Maloneys first contend that the trial court erred by deciding that the Receiving Center could be characterized as a hospital or sanitarium. Minn.Stat. § 144.50 (1996), which governs licensure for a "hospital, sanitarium, or other institution for the hospitalization or care of human beings," defines these institutions as any in which "any accommodation" is offered for five or more persons for "hospitalization of the sick or injured" or for "the institutional care of human beings." *Id.,* subd. 2. This statute defines "hospitalization" as care for more than 24 hours "for the purpose of diagnosis or treatment bearing on the physical or mental health" of the patient. *Id.,* subd. 3.

Maloney admitted himself to detoxication services under Minn.Stat. § 253B.04 (1996), which provides for voluntary admission to a "treatment facility * * * for observation, evaluation, diagnosis, care[,] and treatment." After February 16, 1993, when proceedings to revoke Maloney's stayed commitment began, Maloney remained in the Receiving

Center's care under either an apprehend and hold order, Minn.Stat. § 253B.07, subd. 6 (1996), or a commitment for treatment order, Minn.Stat. § 253B.09 (1996). During his entire stay, Maloney was a patient admitted to a treatment facility for treatment of chemical dependency.

We conclude that the Receiving Center conforms to the definitions of a hospital or institution for the hospitalization or care of human beings within Minn.Stat. § 144.50, subd. 2, and that the application of these definitions is appropriate for purposes of identifying "hospitals" for purposes of Minn. Stat. § 541.07.[1] The Receiving Center is a place in which accommodation is furnished for the "hospitalization of the sick," a conclusion that takes into account the definition of hospitalization as care "for the purpose of diagnosis or treatment bearing on the physical or mental health" of patients. Minn.Stat. § 144.50, subd. 3. The record does not confirm the assertion of appellants that the Receiving Center solely renders babysitting services.

Detoxification centers such as the Receiving Center's Category I rehabilitation program are defined as institutions that "provide services for drug dependent persons," services that public authorities may also furnish by utilizing existing "treatment programs." Minn.Stat. § 254A.08, subd. 1 (1996). A detoxification program is a "social rehabilitation program" created for the purpose of "facilitating access into care and treatment by detoxifying and evaluating the person and providing entrance into a comprehensive program," and detox evaluations shall include "verification by a professional" that the patient "is intoxicated or has symptoms of chemical dependency and appears to be in imminent danger of harming self or others." Id., subd. 2 (1996). The same statute mandates that a detoxification program have available the services of a licensed physician for medical emergencies and routine medical surveillance. Id. And by state rule, Category I programs are required to have a licensed nurse available for consulta-

tion and supervision. Minn.R. 9530.4280, subpt. 4 (1995). The language of Minn.Stat. § 254A.08 makes it evident that the legislature perceived detoxification centers as part of treatment programs and a preliminary step in providing extensive care and treatment.

Several Minnesota Supreme Court cases confirm for us that being placed in a detoxification center is considered being "hospitalized." See St. Paul Fire & Marine Ins. Co. v. D.H.L., 459 N.W.2d 704, 705 (Minn.1990) (stating that client "was hospitalized for detoxification"); State ex rel. Doe v. Madonna, 295 N.W.2d 356, 359 (Minn.1980) (stating that client was subject to "hospitalization in the Hennepin County Detoxification Receiving Center"); Moeller v. Minnesota Dep't of Transp., 281 N.W.2d 879, 880 (Minn.1979) (stating that appellant "was again hospitalized in a detoxification center"). Case law and statutory language lead us to conclude that the Receiving Center is an institution for the hospitalization or care of chemically dependent persons. .

Also, the Receiving Center is an institution for the "institutional care of human beings." Minn.Stat. § 144.50, subd. 2. The Receiving Center, like most detoxification centers, is primarily in-patient and provides for the full scope of patients' needs after they are admitted. Thus, detoxification centers are unlike the institutions, such as blood banks, that the Minnesota Supreme Court has held are not hospitals within the meaning of another Minnesota statute, Minn.Stat. § 145.61 (1990), because they were not "primarily in-patient, comprehensive health care facilities." See Kaiser, 486 N.W.2d at 766. As a primarily in-patient program providing for the full range of patients' needs, we conclude that the Receiving Center provided institutional care for human beings.

Finally, we conclude that this analysis is not diminished by the fact that the Receiving Center is not licensed as a hospital. See Minn.Stat. § 245A.03 (1996) (providing for

---

1. Rather than relying on Minn.Stat. § 144.50, subd. 2, the trial court reasoned that the Receiving Center was a hospital-based program in accordance with Minn.Stat. § 253C.01 (1996).

Minn.Stat. § 253C.01 addresses a subset of residential treatment facilities that provide adolescent care and it does not determine the Receiving Center's status.

the licensure of residential treatment centers). Administrative practice to employ alternative state licensure provisions that deal more generally with human service programs does not alter our reading of statutory provisions that define hospital programs and demonstrate the legislative will on time limits for medical malpractice claims.

### b. Character of suit

Next, appellants contend that their claim against the Receiving Center was not premised on medical malpractice, error, mistake or failure to cure, thus making the second prong triggering the two year statute of limitations in Minn.Stat. § 541.07 inapplicable. The trial court did not specifically address this question. "Malpractice" is commonly defined as:

> Failure of one rendering professional services to exercise that degree of skill and learning commonly applied * * * by the average prudent reputable member of the profession * * *.

*Black's Law Dictionary* 959 (6th ed. 1990). Or malpractice may be defined as "[i]mproper or unethical conduct by the holder of a professional or official position." *The American Heritage Dictionary of the English Language* 1089 (3d ed. 1992).[2]

■ The Receiving Center's professionalism is evident, for example, in its discipline to determine which prescription drugs clients should be allowed to take, coinciding with rules providing that Category I programs, like the Receiving Center's program, cannot allow self administration of prescription drugs. *See* Minn.R. 9530.4330, subpt. 5 (1995). The regulation of drug use requires professional services that reflect staff ability to recognize medical conditions and appropriate treatment medications. This role of the center is an important ingredient in providing services to clients who experience physical responses to denial of the drug on which they are chemically dependent. Also, a Category I program must make visual assessments of a client's health status and measure the client's vital signs, including respiration,

pulse, and blood pressure within one hour of admission. Minn.R. 9530.4320, subpt. 1 (1995). The services rendered by the Receiving Center were professional in nature, and negligent discharge of those duties constitutes malpractice.

Additionally, we see no logical basis for holding the Receiving Center to a different statute of limitations than we would apply to its professional staff. *Cf. Tackleson v. Abbott–Northwestern Hosp., Inc.,* 416 N.W.2d 454, 455 (Minn.1987) (holding that legislature did not intend two different time limits for hospital and its nurses for same conduct; two-year statute of limitations applied to hospital and six-year statute of limitations arguably applied to nurses in hospital).

### 2. Other Issues

■ Appellants contend that a "history of chemical dependency, treatment and commitment" was evidence of Maloney's insanity and that the statute of limitations should have been tolled for a disability under Minn. Stat. § 541.15 (1992). Although commitments may be evidence of insanity, they are not conclusive of incompetency. *Harrington v. County of Ramsey,* 279 N.W.2d 791, 796 (Minn.1979). Further, there is no evidence that Maloney's alcohol abuse rendered him incapable of understanding his legal rights. *See id.* at 795–96 (holding that insanity is substantial inability to understand one's legal rights, manage one's affairs, and prosecute one's claim). We determine that appellants have made no satisfactory showing of incapacity, and the court did not err by failing to toll the statute of limitations.

■ Additionally, the Maloneys assert that Dakota County Social Services is liable for Maloney's injury because allegedly (1) its employee, Agar, directed the Receiving Center to stop allowing Maloney to take his Valium prescription, (2) Agar was responsible for overseeing Maloney's care and negligently failed to order that he be given medical attention, and (3) the Receiving Center acted on behalf of and discharged the responsibilities of Social Services. Despite these

---

**2.** We note that the definition includes improper professional conduct. In this case, we do not interpret "professional" to incorporate any

group of professionals beyond those specified in Minn.Stat. § 541.07 (1996).

allegations, the Maloneys did not produce evidence that Agar ever spoke to anyone at the Receiving Center about Maloney or ever made treatment decisions affecting Maloney. These allegations simply detail what Agar told them he was going to do. Additionally, the court did not commit Maloney to Social Services' care. Because the Maloneys did not show that there was a genuine issue regarding whether Agar took any action affecting Maloney, the court was within its discretion to find that there were no genuine issues of material fact regarding Social Services' culpability. *See Lamont v. Minnesota Dep't of Employee Relations,* 495 N.W.2d 11, 13 (Minn.App.1993) (stating that to defeat motion for summary judgment, nonmoving party must produce specific facts showing genuine issue and citing *Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 855 (Minn.1986)).

## DECISION

The trial court did not misapply Minn.Stat. § 541.07 in granting summary judgment to the Receiving Center. Other contentions of appellants are also without merit.

**Affirmed.**